**Ramona HOLLOWAY, Appellant,**

**v.**

**ARTHUR ANDERSEN AND COMPANY, Appellee.**

No. 76–2248.

United States Court of Appeals, Ninth Circuit.

Dec. 23, 1977.

Howard J. De Nike, of De Nike & Hickman, San Francisco, Cal., for appellant.

Victoria S. Diaz, of Pillsbury, Madison, & Sutro, San Francisco, Cal., for appellee.

Before GOODWIN and ANDERSON, Circuit Judges, and NIELSEN,* District Judge.

NIELSEN, District Judge:

Appellant, Ramona Holloway, a transsexual, claims that appellee, Arthur Andersen and Company, an accounting firm, discriminated against her in employment on account of her sex and has therefore violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Appellant appeals from the trial court's judgment granting Andersen's motion to dismiss for lack of subject matter jurisdiction. The district court determined that Title VII does not embrace transsexual discrimination. We AFFIRM.

## I

Holloway was first employed by Arthur Andersen in 1969 and was then known as Robert Holloway. In 1970, appellant began to receive female hormone treatments. In February of 1974, appellant was promoted to the position of Head Multilith Operator. At this time, appellant informed Marion D. Passard, her supervisor, that appellant was undergoing treatment in preparation for anatomical sex change surgery. In June of 1974, during annual review, an official of the company suggested that appellant would be happier at a new job where her transsexualism would be unknown. However, Holloway was still given a pay raise.

In November, 1974, at her request, Holloway's records were changed to reflect her present first name. Shortly thereafter, on November 18, 1974, Holloway was terminated.

After exhausting her administrative remedies, Holloway filed a complaint alleging that she was fired for her transsexuality,[1] alleging jurisdiction under 28 U.S.C. § 1343(4) and 42 U.S.C. § 2000e–5(f). Defendant filed a motion to dismiss for lack of jurisdiction and for failure to state a claim. Holloway then filed a cross-motion for partial summary judgment on the issue of liability. On April 5, 1976, after a hearing on both motions, the district court issued a memorandum decision which held that transsexualism was not encompassed within the definition of "sex" as the term appears in 42 U.S.C. § 2000e–2(a)(1). Therefore, the court concluded that it lacked jurisdiction, so that judgment issued in defendant's favor. Holloway timely filed a motion to amend the judgment, which was denied.

## II

It is clear from the record that the district court did not reach the merits of Holloway's case.[2] Therefore, the sole issue before us is whether an employee may be discharged, consistent with Title VII, for initiating the process of sex transformation.

■ 42 U.S.C. § 2000e–2(a)(1) provides as follows:

(a) It shall be an unlawful employment practice for an employer

(1) . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or

---

* Honorable Leland C. Nielsen, United States District Judge, for the Southern District of California, sitting by designation.

1. Ms. Passard's affidavit detailed many of the personnel problems created by appellant's transitional appearance (red lipstick and nail polish, hairstyle, jewelry and clothing), his use of the men's room and his behavior at social functions. We note that the district court failed to consider the facts when making its determination, even though Ms. Passard stated that Holloway was not terminated because of transsexualism, "but because the dress, appearance and manner he was affecting were such that it was very disruptive and embarrassing to all concerned."

2. See note 1 supra.

**662**

privileges of employment, because of such individual's . . . sex . . . ."

Appellant contends that "sex" as used above is anonymous with "gender," and gender would encompass transsexuals.[3] Appellee claims that the term sex should be given the traditional definition based on anatomical characteristics.[4]

There is a dearth of legislative history on Section 2000e–2(a)(1), which was enacted as § 703(a)(1) of the Civil Rights Act of 1964, P.L. 88–352. The major concern of Congress at the time the Act was promulgated was race discrimination.[5] Sex as a basis of discrimination was added as a floor amendment one day before the House approved Title VII, without prior hearing or debate. *Willingham v. Macon Telegraph Publishing Co.*, 507 F.2d 1084, 1090 (5th Cir. 1975); *Developments in the Law—Employment Discrimination and Title VII of the Civil Rights Act of 1964*, 84 Harv.L.Rev. 1109, 1167 (1971).

The 1972 Amendments to Title VII in the Equal Employment Opportunity Act of 1972 left the language of § 2000e–2(a)(1) unchanged, but the clear intent of the 1972 legislation was to remedy the economic deprivation of women as a class. 1972 U.S. Code Cong. & Admin.News, pp. 2137, 2140–2141. The cases interpreting Title VII sex discrimination provisions agree that they were intended to place women on an equal footing with men. *See Baker v. California Land Title Company*, 507 F.2d 895, 896 n.2 (9th Cir. 1974), *cert. denied*, 422 U.S. 1046, 95 S.Ct. 2664, 45 L.Ed.2d 699 (1975); *Rosenfeld v. Southern Pacific Company*, 444 F.2d 1219, 1225 (9th Cir. 1971).

Giving the statute its plain meaning, this court concludes that Congress had only the traditional notions of "sex" in mind. Later legislative activity makes this narrow definition even more evident. Several bills have been introduced to *amend* the Civil Rights Act to prohibit discrimination against "sexual preference." None have been enacted into law.[6]

---

**3.** Holloway defines transsexual to be a condition where "gender reversal . . . is present as soon as any behavior that can be called masculinity or femininity begins, even as early as one year of age," or as including those "persons not readily classifiable as male or female."

However, there is no generally accepted definition of the term transsexual. Psychiatric judgments about male-to-female transsexuals have varied from the opinion that a request for a sex change is a sign of severe psychopathology to the opinion that these persons are psychologically normal but misclassified as to gender so that any psychological condition is the direct result of physical misclassification. These views reflect the many different opinions on the origin and development of transsexualism. Some feel that transsexual identification arises from psychosocial learning and others feel that the condition comes from inherited or genetic causes. Finney et al., *A Psychological Study of Transsexualism*, in Proceedings of The Second Interdisciplinary Symposium on Gender Dysphoria Syndrome.

**4.** *Sex* is defined as "*1*: either of two divisions of organisms distinguished respectively as male or female *2*: the sum of the structural, functional, and behavioral peculiarities of living beings that subserve reproduction by two interacting parents and distinguish males and females *3a*: sexually motivated phenomena or behavior *b*: SEXUAL INTERCOURSE."

*Gender* is defined as *1*: SEX *2a*: any of two or more subclasses within a grammatical class of a language . . ." *Webster's Seventh New Collegiate Dictionary* 347,795 (1970).

**5.** 1964 U.S.Code Cong. & Admin.News, pp. 2355–2519.

**6.** Three such bills were presented to the 94th Congress: HR 5452, 94th Cong., 1st Sess. (1975); HR 166, 94th Cong., 1st Sess. (1975) and HR 2667, 94th Cong., 1st Sess. (1975). Seven have been presented to the 95th Congress: HR 451, 95th Cong., 1st Sess. (1977); HR 2998, 95th Cong., 1st Sess. (1977); HR 4794, 95th Cong., 1st Sess. (1977); HR 5239, 95th Cong., 1st Sess. (1977); HR 7775, 95th Cong., 1st Sess. (1977); HR 8268, 95th Cong., 1st Sess. (1977) and HR 8269, 95th Cong., 1st Sess. (1977).

One court has found that Title VII does not protect homosexuals. In *Smith v. Liberty Mutual Ins. Co.*, 395 F.Supp. 1098 (N.D.Ga.1975), the court concluded that Title VII does not currently encompass discrimination against homosexuals and refused to extend the scope of the Act: "Whether or not the Congress should, by law, forbid discrimination based upon 'affectional or sexual preference' of an applicant, it is clear that Congress has not done so. The Civil Rights Act is not just the 'starting point' for this Court's extension of limitations upon employers; it is both the starting point and the ending point." 395 F.Supp. at 1101.

Congress has not shown any intent other than to restrict the term "sex" to its traditional meaning.[7] Therefore, this court will not expand Title VII's application in the absence of Congressional mandate. The manifest purpose of Title VII's prohibition against sex discrimination in employment is to ensure that men and women are treated equally, absent a bona fide relationship between the qualifications for the job and the person's sex.

### III

The Fourteenth Amendment provides that "No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S.Const. amend. XIV, § 1. The Constitution contains no specific equal protection guarantee against the federal government; but the substance of such a guarantee has been implied in the Fifth Amendment Due Process Clause. *Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

Appellant contends that had Congress chosen to expressly exclude transsexuals from the coverage of Title VII, there would be a violation of equal protection. Appellant further claims that a restrictive interpretation of the language of Title VII acts to exclude transsexuals as a class and "at the very least necessarily" raises equal protection problems. Therefore, argues appellant, because the narrow interpretation of the language of Title VII raises such equal protection issues, we must follow the "cardinal principle" of statutory construction as expressed by Justice Brandeis in *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936).

That principle is that one must construe statutes so that constitutional questions may be avoided if at all possible. Therefore, the proper construction of Title VII, according to appellant, is that transsexuals are protected, thus avoiding all possible equal protection problems.

Assuming briefly that appellant has properly raised an equal protection argument, we find no merit to it. Normally, any rational classification or discrimination is presumed valid. That is, a statute is constitutional if the classification or discrimination it contains has some rational relationship to a legitimate government interest, unless the statute is based upon an inherently suspect classification, in which case the statute requires close judicial scrutiny. *Graham v. Richardson*, 403 U.S. 365, 371–72, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971).

This court cannot conclude that transsexuals are a suspect class. Examining the traditional indicia of suspect classification, we find that transsexuals are not necessarily a "discrete and insular minority," *Graham v. Richardson*, 403 U.S. 365, 372, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); nor has it been established that transsexuality is an "immutable characteristic determined solely by the accident of birth" like race or national origin. *Frontiero v. Richardson*, 411 U.S. 677, 686, 93 S.Ct. 1764, 1770, 36 L.Ed.2d 583 (1973). Furthermore, the complexities involved merely in defining the term "transsexual"[8] would prohibit a determination of suspect classification for transsexuals. Thus, the rational relationship test is the standard to apply. In applying this standard to this statute, it can be said without question that the prohibition

---

7. The few transsexual cases also support a restricted view of Title VII. The district court in *Voyles v. Ralph K. Davies Medical Center*, 403 F.Supp. 456 (N.D.Cal.1975), reached the same conclusion as the court below, but *Voyles* is currently on appeal to the Ninth Circuit. In *Grossman v. Bernards Township Board of Education*, [1975] 11 E.P.D. (CCH) ¶ 10,686 (D.N.J. 1975), aff'd mem., 538 F.2d 319 (3d Cir. 1976), cert. denied, 429 U.S. 897, 97 S.Ct. 261, 50 L.Ed.2d 181 (1976), the plaintiff, a schoolteach-

er, had sex change surgery and thereafter lost her job. Though plaintiff was clearly considered to be a female after surgery, the trial court, restricting sex to its "plain meaning," found no sex discrimination. The court instead concluded that plaintiff was not terminated because she was a woman, but because she had changed her sex. 11 E.P.D. ¶ 10,686 at pp. 6884–6885.

8. *See* note 3 *supra*.

of employment discrimination between males and females and on the basis of race, religion or national origin is rationally related to a legitimate governmental interest.

■ An equal protection argument is clearly not appropriate here, however. Pursuant to this court's construction, Title VII remedies are equally available to all individuals for employment discrimination based on race, religion, sex, or national origin. Indeed, consistent with the determination of this court, transsexuals claiming discrimination because of their sex, male or female, would clearly state a cause of action under Title VII. Holloway has not claimed to have treated discriminatorily because she is male or female, but rather because she is a transsexual who chose to change her sex. This type of claim is not actionable under Title VII and is certainly not in violation of the doctrines of Due Process and Equal Protection.

### IV

A transsexual individual's decision to undergo sex change surgery does not bring that individual, nor transsexuals as a class, within the scope of Title VII. This court refuses to extend the coverage of Title VII to situations that Congress clearly did not contemplate. Therefore, the judgment of the district court dismissing Holloway's action for failure to state a claim is AFFIRMED.

GOODWIN, Circuit Judge, dissenting:

While I agree with the majority in the belief that Congress probably never contemplated that Title VII would apply to transsexuals, I dissent from the decision that the statute affords such plaintiffs no benefit. I would not limit the right to claim discrimination to those who were born into the victim class.

The only issue before us is whether a transsexual whose condition has not yet become stationary can state a claim under the statute if discharged because of her undertaking to change her sex. I read from the language of the statute itself that she can.

This is not a "sexual preference" case; this is a case of a person completing surgically that part of nature's handiwork which apparently was left incomplete somewhere along the line.

By its language, the statute proscribes discrimination among employees because of their sex. When a transsexual completes his or her transition from one sexual identity to another, that person will have a sexual classification. Assuming that this plaintiff has now undergone her planned surgery, she is, presumably, female, at least for most social purposes.

This plaintiff alleges that she was discharged from employment while she was in the process of assuming her new sexual identity. Had the employer waited and discharged the plaintiff as a postsurgical female because she had changed her sex, I suggest that the discharge would have to be classified as one based upon sex. I fail to see any valid Title VII purpose to be served by holding that a discharge while an employee is in surgery, or a few days before surgery, is not as much a discharge by reason of sex as a discharge a few days after surgery. The result is the same, whenever the employer sends the discharge notice. Plaintiff alleges that she was fired for being (or becoming) female under circumstances that allegedly disturbed her fellow workers and therefore motivated her employer to terminate her employment.

It seems to me irrelevant under Title VII whether the plaintiff was born female or was born ambiguous and chose to become female. The relevant fact is that she was, on the day she was fired, a purported female. She says she was fired for having become female under controversial circumstances. The employer says these circumstances are disconcerting to other employees. That may or may not be true. Plaintiff says that how she became female is not her employer's business. That may or may not be true. Those are questions that ought to be answered in court, in a trial; they should not be precluded by summary judgment or Rule 12 dismissal.

If the plaintiff is, as the majority holds, claiming only that she was discharged for undertaking a course of medical treatment to achieve a future sex change and is not claiming that she was discharged for becoming a female, then she should be allowed to amend her pleading to conform to the evidence that ordinarily would be developed in pretrial discovery.

Because I believe the plaintiff is entitled to win or lose on her statutory claim, I would not discuss the alleged constitutional claim.

I would vacate the dismissal and remand for further proceedings.