**Willard H. FORD, et al., Plaintiffs,**

v.

**GREEN GIANT COMPANY, a foreign corporation, Defendant.**

**No. C81–369V.**

United States District Court,
W.D. Washington.

Feb. 28, 1983.

Michael J. Fox, of Houghton, Cluck, Coughlin & Riley, Seattle, Wash., for plaintiffs.

Clemens H. Barnes, of Graham & Dunn, Seattle, Wash., for defendant.

## ORDER

VOORHEES, District Judge.

Having considered the plaintiffs' motion for summary judgment, defendant's motion for summary judgment and plaintiffs' motion to compel discovery, together with the affidavits and memoranda submitted by counsel, the Court now finds and rules as follows:

1. This is an action brought by former seasonal agricultural workers of the defendant Green Giant Company, and the class members defined below, seeking damages and injunctive relief against the defendant for an alleged conspiracy to interfere with the plaintiffs' organizational rights guaranteed by R.C.W. 49.32.020, in violation of federal civil rights law. 42 U.S.C. Section 1985(3).

2. This Court certified on January 25, 1982 as the plaintiff class:

all Washington agricultural employees of defendant or persons who have sought, are seeking, or will seek Washington agricultural employment from defendant and have or will have, done any of the following: (a) authorized the United Farm Workers of America, AFL–CIO (UFW) to represent them as their collective bargaining agent; (b) met with UFW organizers or representatives; (c) expressed support or sympathy for the UFW or discussed the UFW with other workers; or (d) engaged in any activities in exercise of their right of freedom of association, self-organization, and designation of representatives of their own choosing to negotiate the terms and conditions of their employment.

3. Section 1985(3) under which plaintiffs seek relief provides in pertinent part:

If two or more persons ... conspire ... for the purpose of depriving ... any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... the party injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. Section 1985(3).

4. The seminal case construing the cause of action under this provision is *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). In that case the Supreme Court held that in order to state a claim under Section 1985(3) the complaining party must allege that:

defendants did (1) conspire ... (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. It must then assert that one or more of the conspirators (3) did, or caused to be done, any act in furtherance of the object of [the] conspiracy whereby another was (4a) injured in his person or property or (4b) deprived of having and exercising any right or privilege of a citizen of the United States.

403 U.S. at 102–03, 91 S.Ct. at 1798. The Court in addition held that intent to deprive any person of equal protection or equal privileges and immunities required that there be "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." 403 U.S. at 102, 91 S.Ct. at 1798.

5. In their original complaint plaintiffs asserted that, because of plaintiffs' membership in the United Farm Workers of America, the defendant conspired with others to interfere with, restrain, and coerce plaintiffs in the right guaranteed to them by R.C.W. 49.32.020 to organize and choose representatives for purposes of collective bargaining. In their second amended complaint, however, plaintiffs assert two claims

under Section 1985(3): the first seeking relief for the alleged conspiracy to deny plaintiffs and members of the class equal protection of the laws or equal privileges and immunities under the laws "because of their status as applicants for union membership or as union supporters"; the second seeking relief for the alleged conspiracy to deny plaintiffs and members of the class equal protection of the laws or equal privileges and immunities under the laws "because of their status as residents of Massachusetts or residents of states other than Washington, Oregon or Idaho."

6. The Court ruled in its order of December 2, 1981, that the plaintiffs had in their original complaint stated a claim upon which relief could be granted under 42 U.S.C. Section 1985(3). The Court's decision was premised, however, upon the allegation that the plaintiffs and class members were members of the United Farm Workers of America. Noting that the Ninth Circuit had yet to decide the question as to whether a class of union members could state a cause of action under Section 1985(3), the Court nonetheless ruled that the pleadings were sufficient to state a claim.

7. It now appears that no named plaintiff and no member of the class was ever a member of the United Farm Workers. Thus, plaintiffs now seek relief not as union members but as (1) union applicants or supporters; or (2) as residents of Massachusetts or non-residents of Washington, Oregon, or Idaho. The Court must determine whether either classification constitutes a protected class for the assertion of a claim for relief under 42 U.S.C. Section 1985(3).

8. In *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court held that Section 1985(3) applied to an alleged private conspiracy to deprive the black plaintiffs of their civil rights. Concerned, however, that the statute might be construed to have application to all tortious, conspiratorial interferences with the rights of others, the Court expressly limited Section 1985(3) to those instances in which the conspirators' actions were motivated by "some racial, or perhaps other-wise class-based invidiously discriminatory animus." 403 U.S. at 102, 91 S.Ct. at 1798. The Court declined to decide whether a conspiracy motivated by invidiously discriminatory animus other than racial bias would be actionable under the statute. 403 U.S. at 102 n. 9, 91 S.Ct. at 1798 n. 9. Following *Griffin,* no circuit has limited the statute exclusively to racial situations. The courts have not been in agreement, however, as to which conspiracies, motivated by a discriminatory animus other than racial, fall within Section 1985(3). *Canlis v. San Joaquin Sheriff's Comitatus,* 641 F.2d 711, 719 (9th Cir.1981).

9. The Ninth Circuit has applied the statute in a case in which female plaintiffs alleged a conspiracy to deprive a class of women purchasers of their equal rights. *Life Insurance Co. of North America v. Reichardt,* 591 F.2d 499 (9th Cir.1979). Although the statute has been expanded beyond its historical purpose of protecting helpless Southern blacks from the violence of the Ku Klux Klan, the boundary is not unlimited. *Canlis v. San Joaquin Sheriff's Comitatus,* 641 F.2d at 719–20. Thus, in *DeSantis v. Pacific Telephone & Telegraph Co., Inc.,* 608 F.2d 327 (9th Cir.1979), the Ninth Circuit refused to find that a class of homosexuals constituted a protected class within the meaning of the statute. The Court rejected the claim on the ground that neither Congress nor the federal courts had at any time determined that the rights of homosexuals required special protection. 608 F.2d at 333.

10. The determination of whether a class composed of union applicants or supporters or a class composed of Massachusetts residents or non-residents of Washington, Oregon, or Idaho, constitutes a protected class under Section 1985(3) is controlled by the Ninth Circuit's requirement that the class must be one warranting special protection by virtue of Congressional action or federal court decision. No showing has been made that Congress or the federal courts have recognized a need to protect the civil rights of residents of particular states. With respect to applicants to

or supporters of the United Farm Workers, the Court notes that agricultural workers are expressly excluded from the National Labor Relations Act. 29 U.S.C. Section 152(3). Other federal labor laws are inapplicable either because nonunion workers are excluded from the acts or because agricultural workers are not within the scope of the acts. *See, e.g.* the Labor-Management Relations Act, 29 U.S.C. Section 141 *et seq.*, which amends the NLRA and by definition excludes agricultural workers; the Labor-Management Reporting and Disclosure Act, 29 U.S.C. Section 401 *et seq.*, which seeks to protect the purposes of the LMRA, and applies to organized labor unions, not organizing workers. The sole statutory provision cited to this Court which protects agricultural workers is subsection 2045(b)(7) of the Farm Labor Contractor Registration Act. 7 U.S.C. Section 2045(b)(7). This statute's stated purpose is to protect migrant agricultural laborers as well as producers and the public from the exploitative practices of farm labor contractors. 7 U.S.C. Section 2041. The Court finds that Subsection 2045(b)(7) does not manifest a congressional intent to accord special federal protection to plaintiffs' civil rights.

11. The plaintiffs described in the second amended complaint may well constitute distinct, identifiable classes, but absent an indication that either class is protected by an Act of Congress or court decision, this Court is compelled to find the protections of Section 1985(3) inapplicable. *DeSantis v. Pacific Telephone & Telegraph Co., Inc.,* 608 F.2d 327, 334 (9th Cir.1979). Those classes most appropriately claiming the protection of Section 1985(3) are those allegedly suffering from an invidiously discriminatory animus akin to racial, sexual or religious bias, or a bias based upon national origin or political preference. *See, e.g. Canlis v. San Joaquin Sheriff's Posse Comitatus,* 641 F.2d 711, 719–20 n. 15 (9th Cir.1981) (cases cited); *DeSantis v. Pacific Telephone & Telegraph Co., Inc.,* 608 F.2d 327, 334 n. 1 (9th Cir. 1979) (Sneed, J., concurring and dissenting, cases cited). Defendant's motion for partial summary judgment must therefore be granted.

12. Plaintiffs have moved for partial summary judgment as to the class claim under R.C.W. 49.32.020. The Court finds that there is a genuine issue of material fact as to defendant's motivation relative to its 1978 hiring conduct. Summary judgment at this time would therefore be improper. Plaintiffs' motion for partial summary judgment must in consequence be denied.

13. Plaintiffs have moved this Court to compel the defendant to provide more complete answers to Plaintiffs' Interrogatories Nos. 25, 26, and 27 which concern defendant's affirmative defenses of laches and estoppel. The Court finds that the defendant's responses are wholly inadequate and that more complete answers are necessary. Plaintiffs' motion to compel more complete answers to interrogatories must therefore be granted.

14. Plaintiffs have also sought to depose any or all of the following witnesses: Duane Dunlap, Fred Langoria, Don Norris, Bill Bauer, John Oyen and Dick Wegener. The plaintiffs assert that these witnesses were present at a meeting held on February 28, 1979 at which defendant's challenged hiring actions were discussed and formulated. Plaintiffs assert that they were not apprised of the subject matter of this meeting until August, 1982. The defendant contends that plaintiffs with due diligence could have ascertained the subject matter of the meeting well in advance of the August, 1982 date. The Court finds that plaintiffs should be granted leave to take the depositions they seek to take.

Accordingly, plaintiffs' motion for partial summary judgment is DENIED; defendant's motion for partial summary judgment is GRANTED. The plaintiffs' motion to compel discovery is GRANTED as to Plaintiffs' Interrogatories 25, 26, and 27. Plaintiffs are accorded leave to depose Messrs. Dunlap, Langoria, Norris, Bauer, Oyen and Wegener, but only as to the February 28, 1979 meeting.

The Clerk of this Court is instructed to send uncertified copies of this order to all counsel of record.