898 F.2d 153
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Leonard T. GATES, Plaintiff-Appellant,
v.
CINCINNATI BELL TELEPHONE COMPANY, Defendant-Appellee.
 No. 88-4106.
 United States Court of Appeals, Sixth Circuit.
 March 23, 1990.
 
 Before BOYCE F. MARTIN, Jr. and BOGGS, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Leonard T. Gates appeals the judgment of the United States Magistrate against him in this retaliatory discharge suit brought under Title VII. 42 U.S.C. Sec. 2000e et seq.[1] We affirm.
 
 
 2
 Gates was an employee of Cincinnati Bell Telephone Company from 1963 until 1986. Gates received strong performance appraisals for many years and was promoted to supervisor in 1980. However, in 1984, Cincinnati Bell had to transfer Gates from one department to another within its Seventh Street facility because of problems stemming from an extramarital affair Gates had with a subordinate, Peggy Geiger McKinney. Gates discussed this affair and other sexual desires with his other subordinates, and he became involved in a disruptive feud with McKinney's husband. These problems culminated in a petition by employees not to be required to work under Gates's supervision. In addition, McKinney filed an internal complaint of sexual harassment against Gates in February, 1985. Gates reacted with hostility to this warning. Gates ultimately had to be transferred from the Seventh Street facility to a different location entirely in May, 1985.
 
 
 3
 In October, 1985, Gates was again transferred at his request to the Dana Garage. At Dana, Gates learned of alleged sexual harassment of one of his subordinates, Myra Stacey, allegedly because she was a lesbian. Gates arranged for Stacey to meet with his supervisor, Ed Drapp, who referred her to the Employee Assistance Program. Drapp arranged for Stacey to meet with Cincinnati Bell's personnel department which led to written warnings to the employees who had harassed Stacey. Drapp also instructed Gates to have a meeting with his subordinates about sexual harassment and discrimination, which Gates did. Stacey also filed a complaint with the Ohio Civil Rights Commission and later with the Equal Employment Opportunity Commission. Both organizations ultimately determined that there was no probable cause that Cincinnati Bell discriminated against Stacey.
 
 
 4
 In November, 1985, Drapp met with Mike Collini, an employee under Gates, at Collini's request. Collini stated that Gates was bothering him and interfering with his work to discuss Gates's involvement with federal agencies and how Gates was going to "get" Cincinnati Bell. Although Drapp was aware of Gates's past problems at other locations, he told Collini that he needed evidence that others in the crew felt the same way. Approximately one month later, Drapp met with two other employees under Gates and Randy Fischer, a union steward in whom Drapp had confidence. They told Drapp that other employees agreed with Collini, and they presented him with a petition requesting Gates's removal as supervisor. Drapp instructed Fischer to poll the employees on this petition. About two weeks later, Fischer told Drapp that a majority of the crew agreed with the petition.
 
 
 5
 Drapp recommended to his superior that Gates be transferred to a nonsupervisory position. Gates was placed on probation and removed from supervisory duties. One week after his transfer, Gates filed a charge with the Equal Employment Opportunity Commission. Gates asserted that his transfer was in retaliation for protected activity, including assistance to Stacey.
 
 
 6
 While preparing to defend against Gates's charge, Cincinnati Bell's attorneys obtained affidavits from employees, many of whom had worked for Gates, to substantiate Cincinnati Bell's position. These affidavits confirmed the initial complaints against Gates and cited new ones. Among other things, they charged that Gates had pumped employees for information about one another by implying that their jobs were at risk, had failed to supervise their work properly, had discussed women in exploitative terms, and had exaggerated trivial situations into perceived crises. This information, together with the previous complaints against Gates, led to Gates's discharge upon the decision of Charles Schulze, the Cincinnati Bell Personnel Director.
 
 
 7
 After a bench trial, the trial court held that Cincinnati Bell had not taken retaliatory action against Gates. Gates appeals each of these determinations by the trial court. First, the court admitted into evidence the affidavits of employees who had worked for Gates at Dana, not for their veracity, but to show what Schulze relied on in dismissing Gates. Second, the trial court held that Gates failed to prove a prima facie case against Cincinnati Bell in regard to his actions with Stacey. The trial court found that sexual preference is not protected under Title VII, and that, even if it were, Gates's conduct regarding Stacey was too insignificant to be protected activity under Title VII. Third, the trial court found that Cincinnati Bell did not violate Title VII by discharging Gates because of hearsay information obtained while defending a charge of retaliatory action before the Equal Employment Opportunity Commission.
 
 
 8
 Gates argues first that the trial court improperly relied on the affidavits of the employees as true in reaching its decision. We disagree. The trial court properly limited its use of these affidavits to assessing what information was available to Schulze, whether Schulze believed the information, and whether Schulze relied on that information in discharging Gates. Gates relies on two statements by the trial court. First, the trial court stated, "Although no evidence was introduced to establish the truth of the affidavits, the evidence showed that the defendant retained reputable counsel and had no reason to doubt the veracity of the information contained in affidavits obtained by them." Second, the trial court stated, "[T]here is absolutely no evidence to support a conclusion that its reputable retained counsel falsified affidavits." These statements do not address the trial court's opinion of the veracity of the affidavits; they go to the reasonableness of Schulze in relying on them. Indeed, the trial court also stated, "I don't think any of these people have testified, so we don't know whether these affidavits are true or false." The trial court went on to reiterate that the issue was whether Schulze could rely on hearsay affidavits obtained by company attorneys in firing an employee. The trial court did not rely on the affidavits for their veracity.
 
 
 9
 The trial court also did not err by holding that Title VII does not bar an employer from discharging an employee based on information subsequently obtained in defending a charge of retaliatory action before the Equal Employment Opportunity Commission. Gates contends that allowing such discharges will chill employees from bringing complaints to the Equal Employment Opportunity Commission. Gates's theory is that employees will fear bringing such an action if an employer can respond by reviewing the past action of an employee to justify a discharge. Such an argument proves too much. An employer clearly could fire an employee if it discovered in the course of preparing for a hearing before the Equal Employment Opportunity Commission that the employee had embezzled. Further, it will be a brave employer that fires an employee while the employee's action is pending before the Equal Employment Opportunity Commission. Such an action will clearly bring heightened scrutiny both from the Commission and from the court if the action later goes to litigation. On the record before us, the trial court's determination that the discharge of Gates was not retaliatory was not clearly erroneous.
 
 
 10
 Finally, Gates argues that the trial court erred in determining that his conduct in regard to his subordinate, Myra Stacey, was not protected by Title VII. It is doubtful whether sexual preference is protected under Title VII. See DeSantis v. Pacific Telephone and Telegraph Co., 608 F.2d 327 (9th Cir.1979); Smith v. Liberty Mutual Ins. Co., 569 F.2d 325 (5th Cir.1978). Even if it is, the trial court also made a factual finding that any activity by Gates was too insignificant to be protected. For example, Gates admitted that when he was confronted with the alleged discrimination against Stacey, he "wanted to go hide." On this record, the trial court's finding was not clearly erroneous.
 
 
 11
 The judgment of the trial court is affirmed.
 
 
 
 [1]
 The parties unanimously consented to conducting all proceedings before the magistrate