**Medina RENE, Plaintiff–Appellant,**

v.

**MGM GRAND HOTEL, INC., Defendant–Appellee.**

No. 98–16924.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted En Banc Sept. 25, 2001.

Filed Sept. 24, 2002.

Richard Segerblom, Las Vegas, NV, for the appellant.

Elayna J. Youchah, Schreck Morris, Las Vegas, NV, for the appellee.

Before: SCHROEDER, Chief Judge, HUG, PREGERSON, TROTT, FERNANDEZ, T.G. NELSON, THOMAS, GRABER, W. FLETCHER, FISHER, and BERZON, Circuit Judges.

Opinion by Judge WILLIAM A. FLETCHER; Concurrence by Judge PREGERSON; Concurrence by Judge GRABER; Concurrence by Judge FISHER; Dissent by Judge HUG.

WILLIAM A. FLETCHER, Circuit Judge.

This case presents the question of whether an employee who alleges that he was subjected to severe, pervasive, and unwelcome "physical conduct of a sexual nature" in the workplace asserts a viable claim of discrimination based on sex under Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e et seq., even if that employee also alleges that the motivation for that discrimination was his sexual orientation. We would hold that an employee's sexual orientation is irrelevant for purposes of Title VII. It neither provides nor precludes a cause of action for sexual harassment. That the harasser is, or may be, motivated by hostility based on sexual orientation is similarly irrelevant, and neither provides nor precludes a cause of

action. It is enough that the harasser have engaged in severe or pervasive unwelcome physical conduct of a sexual nature. We therefore would hold that the plaintiff in this case has stated a cause of action under Title VII.

I

Medina Rene, an openly gay man, appeals from the district court's grant of summary judgment in favor of his employer MGM Grand Hotel in his Title VII action alleging sexual harassment by his male coworkers and supervisor. The relevant facts are not in dispute. Rene worked for the hotel, located in Las Vegas, Nevada, from December 1993 until his termination in June 1996. He worked as a butler on the 29th floor, where his duties involved responding to the requests of the wealthy, high-profile and famous guests for whom that floor was reserved. All of the other butlers on the floor, as well as their supervisor, were also male.

Rene provided extensive evidence that, over the course of a two-year period, his supervisor and several of his fellow butlers subjected him to a hostile work environment on almost a daily basis. The harassers' conduct included whistling and blowing kisses at Rene, calling him "sweetheart" and "muñeca" (Spanish for "doll"), telling crude jokes and giving sexually oriented "joke" gifts, and forcing Rene to look at pictures of naked men having sex. On "more times than [Rene said he] could possibly count," the harassment involved offensive physical conduct of a sexual nature. Rene gave deposition testimony that he was caressed and hugged and that his coworkers would "touch [his] body like they would to a woman." On numerous occasions, he said, they grabbed him in the crotch and poked

their fingers in his anus through his clothing. When asked what he believed was the motivation behind this harassing behavior, Rene responded that the behavior occurred because he is gay.

On June 20, 1996, Rene filed a charge of discrimination with the Nevada Equal Rights Commission. He alleged that he "was discriminated against because of my sex, male" and indicated "I believe that my sex, male, was a factor in the adverse treatment I received." On April 13, 1997, Rene filed a complaint in federal district court, alleging that he had been unlawfully sexually harassed in violation of Title VII [1] and attaching a copy of his Nevada Equal Rights Commission charge. MGM Grand moved for summary judgment on the grounds that "claims of discrimination based on sexual orientation are not cognizable under Title VII[.]"

The district court agreed that Rene had failed to state a cognizable Title VII claim. In granting summary judgment in favor of MGM Grand, it concluded that "Title VII's prohibition of 'sex' discrimination applies only [to] discrimination on the basis of gender and is not extended to include discrimination based on sexual preference." Rene timely appealed.

II

We review a grant of summary judgment de novo. "[Our] review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c).[We] must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Delta Sav-*

---

1. Rene also alleged retaliatory discharge. The district court's grant of summary judg-

ment on that claim was not appealed and is not before us.

*ings Bank v. United States,* 265 F.3d 1017, 1021 (9th Cir.2001) (internal citations omitted).

### III

Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq., provides that "[i]t shall be an unlawful employment practice ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of ... sex[.]" The Supreme Court made clear, more than 15 years ago, in *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), that sexual harassment violates Title VII. Rene alleged that he was sexually harassed by his male supervisor and male coworkers under the hostile work environment theory of sexual harassment. *See Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (noting "the very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their ... gender ... offends Title VII's broad rule of workplace equality").

■ In describing the kinds of sexual harassment that can create a hostile work environment, the Court in *Meritor* explicitly included "physical conduct of a sexual nature." *Meritor,* 477 U.S. at 65, 106 S.Ct. 2399 (quoting EEOC Guidelines, 29 C.F.R. § 1604.11(a) (1985)). We have applied this holding on numerous occasions, "explain[ing] that a hostile environment exists when an employee can show (1) that he or she was subjected to ... physical conduct of a sexual nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." *Ellison v. Brady,* 924 F.2d 872, 875–76 (9th Cir.1991). *See also Little v.*

*Windermere Relocation, Inc.,* 265 F.3d 903, 910 (9th Cir.2001); *Fielder v. UAL Corp.,* 218 F.3d 973, 985 (9th Cir.2000).

It is clear that Rene has alleged physical conduct that was so severe and pervasive as to constitute an objectively abusive working environment. It is equally clear that the conduct was "of a sexual nature." Rene's tormentors did not grab his elbow or poke their fingers in his eye. They grabbed his crotch and poked their fingers in his anus.

Physical sexual assault has routinely been prohibited as sexual harassment under Title VII. A limited sampling of the reported decisions includes *Henderson v. Simmons Foods, Inc.,* 217 F.3d 612, 616 (8th Cir.2000) (groping and shoving broom handle in crotch); *Schmedding v. Tnemec Co., Inc.,* 187 F.3d 862, 865 (8th Cir.1999) (patting buttocks); *Bailey v. Runyon,* 167 F.3d 466, 467 (8th Cir.1999) (grabbing crotch); *Lockard v. Pizza Hut, Inc.,* 162 F.3d 1062, 1067 (10th Cir.1998) (putting mouth on breast); *Zimmerman v. Cook County Sheriff's Dep't,* 96 F.3d 1017, 1018 (7th Cir.1996) (grabbing breast and rubbing buttocks); *Quick v. Donaldson Co.,* 90 F.3d 1372, 1374 (8th Cir.1996) (grabbing and squeezing testicles and flicking groin); *Varner v. Nat'l Super Markets, Inc.,* 94 F.3d 1209, 1211 (8th Cir.1996) (grabbing breasts); *Wrightson v. Pizza Hut of America, Inc.,* 99 F.3d 138, 140 (4th Cir.1996) (rubbing genitals against buttocks); *Waltman v. Int'l Paper Co.,* 875 F.2d 468, 472 (5th Cir.1989) (grabbing breasts and directing high pressure hose at crotch); *Hall v. Gus Construction Co., Inc.,* 842 F.2d 1010, 1012 (8th Cir.1988) (rubbing thighs and grabbing breasts); *Bohen v. City of East Chicago,* 799 F.2d 1180, 1182 (7th Cir.1986) (pressing hands against crotch); *Jones v. Wesco Invs.,* 846 F.2d 1154, 1155 (8th Cir.1986) (touching breasts, pinching and patting buttocks).

Such harassment—grabbing, poking, rubbing or mouthing areas of the body linked to sexuality—is inescapably "because of ... sex." *See Doe v. City of Belleville,* 119 F.3d 563, 580 (7th Cir.1997), *vacated and remanded,* 523 U.S. 1001, 118 S.Ct. 1183, 140 L.Ed.2d 313 (1998) ("[W]e have difficulty imagining when harassment of this kind would *not* be, in some measure, 'because of' the harassee's sex—when one's genitals are grabbed, ... it would seem to us impossible to delink the harassment from the gender of the individual harassed."). The most extreme form of offensive physical, sexual conduct—rape—clearly violates Title VII. *See Little v. Windermere Relocation,* 265 F.3d at 912 ("Rape is unquestionably among the most severe forms of sexual harassment. ... Being raped is, at minimum, an act of discrimination based on sex."); *Brock v. United States,* 64 F.3d 1421, 1423 (9th Cir.1995) ("Just as every murder is also a battery, every rape committed in the employment setting is also discrimination based on the employee's sex.").

In granting MGM Grand's motion for summary judgment, the district court did not deny that the sexual assaults alleged by Rene were so objectively offensive that they created a hostile working environment. Rather, it appears to have held that Rene's otherwise viable cause of action was defeated because he believed he was targeted because he is gay. This is not the law. We have surveyed the many cases finding a violation of Title VII based on the offensive touching of the genitalia, buttocks, or breasts of women. In none of those cases has a court denied relief because the victim was, or might have been, a lesbian. The sexual orientation of the victim was simply irrelevant. If sexual orientation is irrelevant for a female victim, we see no reason why it is not also irrelevant for a male victim.

The premise of a sexual touching hostile work environment claim is that the conditions of the work environment have been made hostile "because of ... sex." *See Ellison,* 924 F.2d at 876. The physical attacks to which Rene was subjected, which targeted body parts clearly linked to his sexuality, were "because of ... sex." Whatever else those attacks may, or may not, have been "because of" has no legal consequence. "[S]o long as the environment itself is hostile to the plaintiff because of [his] sex, why the harassment was perpetrated (sexual interest? misogyny? personal vendetta? misguided humor? boredom?) is beside the point." *Doe,* 119 F.3d at 578.

Our opinion today is guided by the principles established by the Supreme Court in *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). As recounted by the Court, the Title VII plaintiff in *Oncale* had been "forcibly subjected to sex-related, humiliating actions" and had been "physically assaulted ... in a sexual manner" by other males at his place of employment. *Oncale,* 523 U.S. at 77, 118 S.Ct. 998. We know from the circuit court's opinion that this physical assault included, among other things, "the use of force by [one co-worker] to push a bar of soap into Oncale's anus while [another co-worker] restrained Oncale as he was showering[.]" *Oncale v. Sundowner Offshore Servs., Inc.,* 83 F.3d 118, 118–19 (5th Cir.1996). This behavior occurred, the Court noted, in an all-male workplace. Oncale was a male plaintiff who worked on an all-male off-shore oil drilling rig "as a roustabout on an eight-*man* crew." *See Oncale,* 523 U.S. at 77, 118 S.Ct. 998 (emphasis added). Oncale's employer, Sundowner, never employed women on any of its drilling rigs. *See* Joint App. at 76.

Based on these facts, the Supreme Court reversed the judgment of the Court

of Appeals for the Fifth Circuit, which had affirmed a grant of summary judgment in favor of the defendant-employer on the grounds that "same-sex harassment is not cognizable under Title VII." *Oncale*, 83 F.3d at 118. We take two lessons from the Court's decision in *Oncale*.

First, Title VII forbids severe or pervasive same-sex offensive sexual touching. The Court made clear that a plaintiff's action for sexual harassment under Title VII cannot be defeated by a showing that the perpetrator and the victim of an alleged sexual assault are of the same gender. The Court wrote,

> We see no justification in the statutory language or our precedents for a categorical rule excluding same-sex harassment claims from the coverage of Title VII. As some courts have observed, male-on-male sexual harassment in the workplace was assuredly not the principal evil Congress was concerned with when it enacted Title VII. But statutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed.

*Oncale*, 523 U.S. at 79, 118 S.Ct. 998; *see also id.* at 78, 118 S.Ct. 998 ("Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group." (citation and internal quotation omitted)). Thus, Oncale's cause of action could not be defeated based on the fact that he was tormented *by other men.*

Second, offensive sexual touching is actionable discrimination even in a same-sex workforce. The Court in *Oncale* made clear that "discrimination" is a necessary predicate to every Title VII claim. That is, a defendant's conduct must not merely be "because of ... sex"; it must be "*'discriminat[ion]* ... because of ... sex.'" *Oncale*, 523 U.S. at 81, 118 S.Ct. 998 (emphasis in original). The Court in *Oncale* held that "discrimina[tion] ... because of ... sex" can occur entirely among men, where some men are subjected to offensive sexual touching and some men are not. There were no women on Oncale's drilling rig; indeed, there were no women on any of his employer's oil rigs. Discrimination is the use of some criterion as a basis for a difference in treatment. In the context of our civil rights laws, including Title VII, discrimination is the use of a *forbidden* criterion as a basis for a *disadvantageous* difference in treatment. "Sex" is the forbidden criterion under Title VII, and discrimination is any disadvantageous difference in treatment "because of ... sex." The *Oncale* Court's holding that offensive sexual touching in a same-sex workforce is actionable discrimination under Title VII necessarily means that discrimination can take place between members of the same sex, not merely between members of the opposite sex. Thus, Oncale did not need to show that he was treated worse than members of the opposite sex. It was enough to show that he suffered discrimination *in comparison to other men.*

Viewing the facts, as we must, in the light most favorable to the nonmoving party, we are presented with the tale of a man who was repeatedly grabbed in the crotch and poked in the anus, and who was singled out from his other male co-workers for this treatment. It is clear that the offensive conduct was sexual. It is also clear that the offensive conduct was discriminatory. That is, Rene has alleged that he was treated differently—and disadvantageously—based on sex. This is precisely what Title VII forbids: "discriminat[ion] ... because of ... sex."

In sum, what we have in this case is a fairly straightforward sexual harassment claim. Title VII prohibits offensive "physical conduct of a sexual nature" when that conduct is sufficiently severe or pervasive. *Meritor,* 477 U.S. at 65, 106 S.Ct. 2399. It prohibits such conduct without regard to whether the perpetrator and the victim are of the same or different genders. *See Oncale,* 523 U.S. at 79, 118 S.Ct. 998. And it prohibits such conduct without regard to the sexual orientation—real or perceived—of the victim.

There will be close cases on the question of what constitutes physical conduct of a sexual nature, for there are some physical assaults that are intended to inflict physical injury, but are not intended to have (and are not interpreted as having) sexual meaning. That is, there will be some cases in which a physical assault, even though directed at a sexually identifiable part of the body, does not give rise to a viable Title VII claim. But this is not such a case. Like the plaintiff in *Oncale,* Rene has alleged a physical assault of a sexual nature that is sufficient to survive a defense motion for summary judgment.

This opinion is joined by Judges Trott, Thomas, Graber, and Fisher. Judge Pregerson, in a separate opinion joined by Judges Trott and Berzon, reaches the same result but under a different rationale. Taken together, these two opinions are joined by a majority of the en banc panel. Accordingly, the district court's grant of summary judgment to MGM Grand is REVERSED, and the case is REMANDED for further proceedings.

PREGERSON, Circuit Judge, with whom TROTT and BERZON, Circuit Judges, join, concurring.

I concur in the result of Judge Fletcher's opinion. I write separately to point out that in my view, this is a case of actionable gender stereotyping harassment.

More than a decade ago, the Supreme Court held that gender stereotyping is actionable under Title VII. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 250–51, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). More recently, the Supreme Court held that "same-sex sexual harassment is actionable under Title VII." *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). And only last year, we held that same-sex gender stereotyping of the sort suffered by Rene—*i.e.,* gender stereotyping of a male gay employee by his male co-workers—"constituted actionable harassment under ... Title VII." *Nichols v. Azteca Restaurant Enterprises, Inc.,* 256 F.3d 864, 874–75 (9th Cir.2001).

Rene testified in his deposition that his co-workers teased him about the way he walked and whistled at him "[l]ike a man does to a woman." Rene also testified that his co-workers would "caress my butt, caress my shoulders" and blow kisses at him "the way ... a man would treat a woman," hugged him from behind "like a man hugs a woman," and would "touch my body like they would to a woman, touch my face." Rene further testified that his co-workers called him "sweetheart" and "muñeca" ("doll"), "a word that Spanish men will say to Spanish women." This conduct occurred "many times." The repeated testimony that his co-workers treated Rene, in a variety of ways, "like a woman" constitutes ample evidence of gender stereotyping.[1]

The conduct suffered by Rene is indistinguishable from the conduct found actionable in *Nichols.* In that case,

> there is much more evidence of gender ster-

---

1. Thus, contrary to a claim in the dissent,

Male co-workers and a supervisor repeatedly referred to [the male gay plaintiff] in Spanish and English as "she" and "her." Male co-workers mocked [him] for walking and carrying his serving tray "like a woman," and taunted him in Spanish and English as, among other things, a "faggot" and a " . . . female whore."

256 F.3d at 870. We concluded in *Nichols* that "[the] rule that bars discrimination on the basis of sex stereotypes" set in *Price Waterhouse* "squarely applies to preclude the harassment here." *Nichols,* 256 F.3d at 874–75. More generally, we held that "this verbal abuse was closely related to gender," "occurred because of sex," and therefore "constituted actionable harassment under . . . Title VII." *Id.*

The similarities between *Nichols* and the present case are striking. In both cases, a male gay employee was "teased" or "mocked" by his male co-workers because he walked "like a woman."[2] And in both cases, a male gay employee was referred to by his male-co-workers in female terms—"she," "her," and "female whore" in *Nichols;* "sweetheart" and "muñeca" ("doll") in the present case—to "remind[ ][him] that he did not conform to their gender-based stereotypes." *Nichols,* 256 F.3d at 874. For the same reasons that we concluded in *Nichols* that "[the] rule that bars discrimination on the basis of sex stereotypes" set in *Price Waterhouse* "squarely applie[d] to preclude the harassment" at issue there, *Nichols,* 256 F.3d at 874–75, I conclude that this rule also squarely applies to preclude the identical harassment at issue here.[3] Accordingly, this is a case of actionable gender stereotyping harassment.

GRABER, Circuit Judge, concurring.

I concur in Judge W. Fletcher's opinion because the facts here are materially indistinguishable from the facts in *Oncale v.*

eotyping in the present case than only "one line in Rene's deposition of over one hundred pages." Diss. at 1077 note 4.

2. It is not significant that, unlike the male employee in *Nichols*, Rene did not testify that his co-workers teased him for "walking . . . 'like a woman,' " *id.* at 870, but only that his co-workers "teas[ed][him] about the way [he] walk[ed] and . . . whistle[d] at [him] like a woman." There would be no reason for Rene's co-workers to whistle at Rene "like a woman," unless they perceived him to be not enough like a man and too much like a woman. That is gender stereotyping, and that is what Rene meant when he said he was discriminated against because he was *openly* gay. Likewise, contrary to a claim in the dissent, it is not significant that Rene apparently perceived himself to be "masculine." Diss. at 1077. At issue is not what Rene perceived himself to be, but rather what his co-workers perceived him to be, and how they acted upon that perception.

3. It is also worth noting that the "butlers" that served the Grand Hotel's guests on the 29th floor were, for whatever reason, all male, as the term "butler" connotes. All-male workplaces are common sites for the *policing of gender norms and the harassment* of men who transgress such norms. *See, e.g.,* Margaret Stockdale, Michelle Visio, and Leena Batra, *The Sexual Harassment of Men: Evidence for a Broader Theory of Harassment and Sex Discrimination,* 5 Psychol. Pub. Pol'y & L. 630, 653–54 (1999) (stating that "Predominantly or exclusively male environments tend to be more sexualized and less professional than gender neutral environments," and finding that data from a Department of Defense sexual harassment survey "support the trend that same-sex sexually harassed men worked in more male-dominated workplaces than did other men"); Vicki Schultz, *Reconceptualizing Sexual Harassment,* 107 Yale L.J. 1683, 1755 n. 387 (1998) ("[M]any male workers may view not only their jobs, but also the male-dominated composition and masculine identification of their work, as forms of property to which they are entitled."); *Oncale,* 523 U.S. at 77, 118 S.Ct. 998 (oil rig crew in which harassed male plaintiff worked was all male).

*Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). If summary judgment in the employer's favor was inappropriate in that case, it is equally so in this one.

I write separately to note that I agree with Judge Hug's dissent on two issues that the majority opinion does not reach: (1) Title VII does not protect employees from discrimination because of sexual orientation and (2) Rene did not assert a theory of "sexual stereotyping."

FISHER, Circuit Judge, Concurring.

I concur in Judge Fletcher's opinion. Summary judgment is improperly granted where, as in this case, the "inference of discrimination" because of sex is "easy to draw." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). The repeated physical attacks targeted at body parts clearly linked to Rene's gender constituted overwhelming evidence from which a jury could infer that the attacks were based, at least in part, on Rene's sex. *See* 42 U.S.C. § 2000e–2; *see also, e.g., Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463–64 (9th Cir.1994) (holding that when abuse directed at women "center[s] on the fact that they [are] females," a jury may infer discrimination based on gender); *Doe v. City of Belleville*, 119 F.3d 563, 580 (7th Cir.1997) ("Frankly, we find it hard to think of a situation in which someone intentionally grabs another's testicles for reasons entirely unrelated to that person's gender."), *vacated and remanded by* 523 U.S. 1001, 118 S.Ct. 1183, 140 L.Ed.2d 313 (1998); *Quick v. Donaldson Co.*, 90 F.3d 1372, 1378 (8th Cir.1996) (holding that "bagging" of testicles of men by other men in predominantly male workforce was "[e]vidence that members of one sex were the primary targets" of harassment "sufficient to show that the conduct was gender

based for purposes of summary judgment"). The alleged abuse Rene suffered was also sufficiently hostile and abusive to distinguish it from "simple teasing and roughhousing among members of the same sex." *Oncale*, 523 U.S. at 82, 118 S.Ct. 998.

I also agree with Judge Pregerson that the many examples in which Rene was allegedly physically touched and verbally mocked by his harassers as being "like a woman" constituted ample evidence from which a jury could conclude that the harassment Rene endured was based on gender stereotyping. *See Nichols v. Azteca Rest. Enter., Inc.*, 256 F.3d 864, 874–75 (9th Cir.2001).

HUG, Circuit Judge, with whom SCHROEDER, Chief Judge, FERNANDEZ, and T.G. NELSON, Circuit Judges, join, dissenting.

I respectfully dissent from Judge Fletcher's plurality opinion and Judge Pregerson's opinion concurring in the result, but expressing a different rationale for the result. The basis for Judge Fletcher's opinion is that harassment of a person in the workplace in the form of severe unwelcome physical conduct of a sexual nature is sufficient to establish a cause of action under Title VII of the Civil Rights Act, regardless of whether that harassment constitutes discrimination *because of* race, color, religion, gender, or national origin. I disagree because this completely eliminates an essential element of that statute, that the harassment be *because of* discrimination against one of the five specified categories of persons named in the statute. Judge Pregerson's opinion is based upon gender stereotyping harassment, which was never asserted by Rene in the district court and was not supported by evidence presented to the district court. In my opinion this is manufacturing a claim for

Rene on appeal that was never advanced by him or supported by evidence in the district court.

## I.

The basis of Judge Fletcher's opinion is well expressed in the following statement from the first paragraph:

This case presents the question of whether an employee who alleges that he was subjected to severe, pervasive, and unwelcome "physical conduct of a sexual nature" in the workplace asserts a viable claim of discrimination based on sex under Title VII of the 1964 Civil Rights Act.... It is enough that the harassers have engaged in severe or pervasive unwelcome physical conduct of a sexual nature.

This is a mischaracterization of the pertinent section of Title VII and the Supreme Court's interpretation of that section.

The pertinent section of Title VII provides:

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's race, color, religion, sex, or national origin[.]

42 U.S.C. § 2000e–2(a)(1) (emphasis added). Supreme Court decisions have made it clear that the term "sex" in that section refers to "gender." The terms "sex" and "gender" have been used interchangeably to mean "gender." Thus, it is discrimination based on "gender" that is prohibited. *See Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Price Waterhouse v. Hopkins,* 490 U.S. 228, 239, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

## II.

I believe the following is a proper application of the statute as interpreted by the Supreme Court.

1. Title VII provides that it is an unlawful employment practice to *discriminate* against a person because of that person's race, color, religion, sex, or national origin.

2. Harassment on the job can be a form of discrimination. *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

3. Thus, Title VII protects against harassment, as a type of discrimination on the job if it is because of race, color, religion, sex, or national origin. Harassment for other reasons, for example, because a person is short, fat, bald, disfigured, belongs to an unpopular social group, belongs to a particular political party, or engages in other activities outside the work-place, including sexual activities, that the harasser disfavors, is not actionable under Title VII.

4. Harassment on the job by physical assault or humiliation because a person is Asian, Black, a Jehovah's Witness, Polish, or because of the person's gender is actionable under Title VII because it is a type of discrimination and is against the particular classes of people protected by Title VII.

5. Title VII does not protect against physical assaults as a general matter. In order for an assault to be actionable under Title VII it must be a *type of discrimination* against one of the five protected classes.

6. If a person is assaulted or otherwise harassed on the job in a sexual man-

ner, it is a form of discrimination against that person. However, the assault or harassment is actionable under Title VII only if it is *because of* that person's race, color, religion, gender, or national origin.

7. Sexual harassment on the job can be a form of discrimination that is actionable under Title VII if it is *because of* the person's gender. For example, "when a supervisor sexually harasses a subordinate *because of the subordinate's sex*, that supervisor 'discriminate[s]' on the basis of sex." *Meritor*, 477 U.S. at 64, 106 S.Ct. 2399 (emphasis added).

8. Discrimination because of sex (gender) can extend to sexual stereotyping on the job. For example, if a woman does not act on the job in the way her employers perceived she should act as a woman, as was the situation in *Price Waterhouse*, or if a man does not act on the job like it is perceived a man should, as was the situation in *Nichols v. Azteca Restaurant Enterprises, Inc.*, 256 F.3d 864 (9th Cir.2001), this can be sexual stereotyping and actionable under Title VII.

9. Discrimination in the form of harassment or assault on the job because of a man's activity *outside* the workplace, such as his sexual activities, is not a basis for discrimination based on gender stereotyping of how he is expected to work on the job. A person might conform to all the stereotypes of masculinity on the job yet have a homosexual orientation in his own private life.

10. Discrimination based on gender can extend to discrimination against a person of one sex by a person of the same sex. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S.

75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

### III.

It is by now clear that sexual harassment can be a form of discrimination based on sex. *Meritor*, 477 U.S. at 64, 106 S.Ct. 2399. The Supreme Court stated: "Without question, when a supervisor sexually harasses a subordinate *because of the subordinate's sex*, that supervisor 'discriminate[s]' on the basis of sex." *Id.* (emphasis added). In that case the evidence that a male supervisor made unwelcome sexual advances to a woman subordinate was sufficient to constitute discrimination based on sex.

Rene alleged that he was discriminated against because he was gay. Alleging a hostile work environment theory of sexual harassment, Rene alleged that he was sexually harassed by his male co-workers and a supervisor. To succeed on that theory, Rene must first prove that he was forced to endure a subjectively and objectively abusive working environment. *See Oncale*, 523 U.S. at 81, 118 S.Ct. 998; *Harris*, 510 U.S. at 21–22, 114 S.Ct. 367; *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir.2000). In this case, the parties do not dispute the existence of a hostile work environment, for there is no doubt that the harassment that Rene alleged was so objectively offensive that it created a hostile work environment. The dispute is whether he was discriminated against because of his gender.

Rene relies on *Oncale* to make his case, contending that the Supreme Court impliedly held that discrimination based on sexual orientation is actionable under Title VII. This is a misreading of *Oncale*. That case did involve harassment of the male plaintiff by his male co-workers, some of which was similar to the harassment in this case. The Fifth Circuit Court of Ap-

peals affirmed summary judgment in favor of the employer on the ground that "Mr. Oncale, a male, has no cause of action under Title VII for harassment by male co-workers." *Oncale,* 523 U.S. at 77, 118 S.Ct. 998. The sole issue before the Supreme Court on certiorari was whether same-sex sexual harassment is actionable under Title VII. The Court held that it was. However, the Supreme Court explained, "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at *'discriminat[ion]* ... because of ... sex.' " *Id.* at 80, 118 S.Ct. 998. Never has it been held "that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations." *Id.* Rather, under Title VII, the plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted *'discrimina[tion]* ... because of ... sex.' " *Id.* at 81, 118 S.Ct. 998.

Justice Thomas added a concurring opinion specifically to emphasize that the discrimination had to be "because of sex." The concurring opinion states:

> I concur because the Court stresses that in every sexual harassment case, the plaintiff must plead and ultimately prove Title VII's statutory requirement that there be discrimination "because of ... sex."

*Id.* at 82, 118 S.Ct. 998. Thus, the Supreme Court in *Oncale* did not hold that the harassment alleged by the plaintiff in that case was actionable under Title VII. The Court, rather, simply rejected the Fifth Circuit's holding that same-sex harassment could *never* be actionable under Title VII. *See Oncale,* 523 U.S. at 82, 118 S.Ct. 998 ("Because we conclude that sex discrimination consisting of same-sex sexual harassment is actionable under Title VII, the judgment of the Court of Appeals for the Fifth Circuit is reversed ...."); *id.* at 79, 118 S.Ct. 998 (criticizing the Fifth Circuit's view that "same-sex sexual harassment claims are never cognizable under Title VII").

After clarifying that same-sex sexual harassment could be actionable under Title VII, the Court remanded to the Fifth Circuit to address the question of whether the harassment was "because of sex," that is, whether the harassment was because of Oncale's gender. That issue had not been addressed by the district court or the circuit court because of the holdings of those courts that same-sex harassment could never be actionable under Title VII. The Court gave illustrations of how same-sex harassment could be "because of sex" and thus actionable under Title VII. Oncale had alleged both quid pro quo and hostile work environment sexual harassment in the district court. *Oncale v. Sundowner Offshore Servs., Inc.,* 83 F.3d 118, 119 (5th Cir.1996).[1] On remand, the lower courts were to address the question of whether this sexual harassment was because of his gender. There was no implication in the Supreme Court's opinion that the alleged sexual harassment was "because of sex." That determination, which had not been

---

1. There is an implication in Judge Fletcher's opinion that because sexual touching was involved in *Oncale's* case the remand was a holding that this was sufficient. In the district court Oncale alleged both quid pro quo and hostile work environment sexual harassment, *Oncale,* 83 F.3d at 119, thus the remand was to consider both types of alleged harassment in light of the statutory requirement that it be because of his gender. Quid pro quo harassment is generally understood to be a supervisor seeking or insisting on sexual favors from an employee in order to maintain his or her job or to obtain advancement. This may have been involved in *Oncale,* but was never alleged by Rene.

previously considered, was to be addressed by the lower courts on remand.

Judge Fletcher's opinion in effect interprets *Oncale* to mean that if the defendant's conduct was "sexual in nature" the statutory requirements of Title VII are met. The opinion then reasons that because the touching in this case was sexual in nature and was discriminatory, Rene has stated a claim under Title VII. This misinterprets *Oncale*. The *Oncale* Court did say that "[w]e see no justification in the statutory language or our precedents for a categorical rule excluding same-sex harassment claims from the coverage of Title VII." 523 U.S. at 79, 118 S.Ct. 998. However, the Court qualified that by stating "Title VII prohibits 'discriminat[ion] ... because of ... sex' in the 'terms' or 'conditions' of employment. Our holding that this includes sexual harassment must extend to sexual harassment of any kind *that meets the statutory requirements.*" *Oncale*, 523 U.S. at 79–80, 118 S.Ct. 998 (emphasis added). Thus, the Court stressed that the harassment type of discrimination must meet the statutory requirement of "because of sex." Justice Thomas' concurrence emphasized that point. *Oncale*, 523 U.S. at 82, 118 S.Ct. 998. Differential treatment of an individual based only on conduct that is "sexual in nature" does not meet the statutory requirement.[2] The alleged harassment in this case was not on account of the plaintiff's sex, i.e., this plaintiff was not treated differently from all the other male butlers

because he was male. Rene contended that he was treated differently because he was homosexual.

Title VII is not an anti-harassment statute; it is an anti-discrimination statute against persons in five specific classifications: race, color, religion, sex, or national origin. Harassment can be a type of discrimination against persons in one of those five specific classifications. However, in order for harassment to be actionable it has to be a type of discrimination "because of" race, color, religion, sex, or national origin. There are many types of harassment in the workplace that are very offensive but are not actionable under the federal Title VII law.

While the Court held in *Oncale* that same-sex harassment can be actionable under Title VII, it did not hold that same-sex harassment because of sexual orientation is actionable under Title VII. The Court gave three examples of ways a plaintiff can prove that members of one sex can discriminate against members of the same sex because of gender. *Id.* at 80–81, 118 S.Ct. 998. These examples are not the exclusive ways, but rather are illustrative of same-sex harassment because of gender that could be actionable under Title VII.

First, the plaintiff could show that the harasser was motivated by sexual desire; this route, the Court stated, requires that there be "credible evidence that the harasser was homosexual." *Id.* at 80, 118 S.Ct. 998. Rene has presented no evidence that

**2.** One of the cases relied upon in Judge Fletcher's opinion is *Doe v. City of Belleville*, 119 F.3d 563 (7th Cir.1997). It is noteworthy that the Supreme Court, in describing the treatments given this subject by various circuits, characterized that case as follows: "Still others suggest that work-place harassment that is sexual in content is always actionable, regardless of the harasser's sex, sexual orientation, or motivations." *Oncale*, 523 U.S. at 79, 118 S.Ct. 998. This is essentially

the same argument being made by Judge Fletcher's opinion. Had the Supreme Court in *Doe* agreed with this proposition it would seem that it would have summarily affirmed. Instead, it vacated and remanded the case, 523 U.S. 1001, 118 S.Ct. 1183, 140 L.Ed.2d 313 (1998). This is a strong indication that workplace harassment, which is simply "sexual in content," is not always actionable; the "because of sex" statutory requirement must be met before the harassment is actionable.

any of his harassers were homosexual, nor that they were in any way motivated by sexual desire. On the contrary, evidence presented by Rene suggests not that they desired him sexually, but rather that they sought to humiliate him because of his sexual orientation.

The second route identified by the Court for proving same-sex sexual harassment requires that the plaintiff demonstrate that he was "harassed in such sex-specific and derogatory terms by another [man] as to make it clear that the harasser [was] motivated by general hostility to the presence of [men] in the workplace." *Id.* Rene presented no evidence of this form of harassment. In fact, it is difficult to imagine how he could have; *all* of his co-workers on the 29th floor were male, and it would thus be strange indeed to conclude that their harassment of Rene was motivated by a "general hostility to the presence of [men] in the workplace." *Id.*

Third, the Court stated that a plaintiff may "offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." *Id.* at 80–81, 118 S.Ct. 998. Rene cannot avail himself of this route because he worked on the 29th floor of the MGM Grand Hotel, where only men were employed.

In each of these illustrations the harassment type of discrimination is directed at a person because of that person's gender. Given the facts of the *Oncale* case itself, it is significant that the Supreme Court did not indicate that one of the ways a plaintiff can prove same-sex discrimination is harassment because of sexual orientation. In Rene's case he clearly stated in his deposition that the reason for the harassment was that he was gay. No other reason was offered to the district court.

In determining the motivation for harassment, courts must be mindful of the fact that Title VII protects against discrimination only on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). Discrimination based on a victim's other characteristics, no matter how unfortunate and distasteful that discrimination may be, simply does not fall within the purview of Title VII. The Court in *Price Waterhouse* specifically made that point in quoting from an interpretive memorandum entered in the Congressional Record by the co-managers in the Senate of the bill that became Title VII. The Court quoted the portion of the memorandum that stated:

> To discriminate is to make a distinction, to make a difference in treatment or favor, and those distinctions or differences in treatment or favor which are prohibited by section 704 are those which are based on any five of the forbidden criteria: race, color, religion, sex, and national origin. *Any other criterion or qualification for employment is not affected by this title.*

490 U.S. at 244, 109 S.Ct. 1775 (emphasis added).

This court recognized that fact more than twenty years ago in *DeSantis v. Pacific Telephone & Telegraph Co.,* 608 F.2d 327, 329–30 (9th Cir.1979), when we held that discrimination on the basis of sexual orientation does not subject an employer to liability under Title VII. While societal attitudes toward homosexuality have undergone some changes since *DeSantis* was decided, Title VII has not been amended to prohibit discrimination based on sexual orientation; this aspect of *DeSantis* remains good law and has been followed in other circuits. *See, e.g., Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 259 (1st Cir.1999); *Wrightson v. Pizza Hut of Am., Inc.,* 99 F.3d 138, 143 (4th Cir.1996); *Williamson v. A.G. Edwards & Sons, Inc.,* 876 F.2d 69, 70 (8th Cir.1989) (per curiam).

More recently the Third Circuit in *Bibby v. Phila. Coca–Cola Bottling Co.*, 260 F.3d 257 (3d Cir.2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 1126, 151 L.Ed.2d 1018 (2002), held that harassment based on sexual orientation is not actionable under Title VII. The allegations of harassment in that case, as in this one, were solely based on harassment because of sexual orientation. The court stated:

> [I]t is clear that "[w]hatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted '*discrimina[tion]* ... *because of ... sex.*'" *Oncale* at 81[, 118 S.Ct. 998]. Bibby simply failed in this respect; indeed, *he did not even argue that he was being harassed because he was a man and offered nothing that would support such a conclusion.* There was no allegation that his alleged harassers were motivated by sexual desire, or that they possessed any hostility to the presence of men in the workplace or in Bibby's particular job. *Moreover, he did not claim that he was harassed because he failed to comply with societal stereotypes* of how men ought to appear or behave.... His claim was, pure and simple, that he was discriminated against because of his sexual orientation. *No reasonable finder of fact could reach the conclusion that he was discriminated against because he was a man.*

*Id.* at 264 (some emphasis added).

If sexual orientation is to be a separate category of protection under Title VII, this is a matter for Congress to enact. Over the years since the passage of Title VII, numerous bills have been introduced to include sexual orientation as a protected classification.[3] None has passed.

## IV.

In *Price Waterhouse*, the Supreme Court held that discrimination based on sex stereotyping was a type of gender discrimination that is actionable under Title VII. The Court held that a woman, who was denied partnership in an accounting firm in part because she did not conform to what some of the partners thought was the appropriate way a woman should act, had an actionable claim under Title VII.

The Court noted:

> There were clear signs ... that some of the partners reacted negatively to Hopkins' personality because she was a woman. One partner described her as "macho"; another suggested that she "overcompensated for being a woman"; a third advised her to take "a course at charm school." Several partners criticized her use of profanity; in response, one partner suggested that those partners objected to her swearing only "because it's a lady using foul language." ... [Another advised her that she] should "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry."

*Price Waterhouse*, 490 U.S. at 235, 109 S.Ct. 1775 (internal citations to record

---

**3.** Among those introduced and failed to be passed are the Employment Non–Discrimination Act of 1994, H.R. 4636, 103d Cong. (1994); the Employment Non Discrimination Act of 1995, H.R. 1863, 104th Cong. (1995); the Employment Nondiscrimination Act of 1996, S.2056, 104th Cong. (1996); and the Employment Nondiscrimination Act of 2001, S.19, 107th Cong. (2001). The stated purposes of this last act were to provide a comprehensive federal prohibition of employment discrimination on the basis of sexual orientation and to provide meaningful and effective remedies for employment discrimination on the basis of sexual orientation.

omitted). The Court noted that the district judge had concluded "that the reactions of at least some of the partners were reactions to her as a *woman* manager." *Id.* at 258, 109 S.Ct. 1775. Thus, in *Price Waterhouse,* there was substantial evidence that part of the reason the plaintiff was denied a partnership was that her actions on the job did not conform to those expected of a woman manager. Yet the same actions would have been tolerated, or perhaps encouraged, in a male manager.

Recently, we held in *Nichols v. Azteca Restaurant Enterprises, Inc.,* 256 F.3d 864 (9th Cir.2001), that harassment of a male waiter by male workers and a supervisor amounted to harassment because of sex stereotyping and thus was discrimination because of gender. In that case the plaintiff presented evidence that the harassment was because he acted too feminine on the job. He was taunted for walking and carrying his serving tray like a woman and for having feminine mannerisms. He was harassed because he did not act on the job as his co-workers perceived he should act as a man, not just because of his sexual orientation. 256 F.3d at 874–75. This corresponds to the sex stereotyping described in *Price Waterhouse.*

In Rene's case there was no contention before the district court that the harassment Rene experienced was because he acted effeminately on the job, or for any reason other than his sexual orientation. The first line of the legal argument presented to the district court in opposition to the motion for summary judgment crystalizes this point in stating:

> The question raised by the motion is whether the conduct as alleged by Rene is prohibited by Title VII even though it was directed at Rene because of his sexual orientation.

Rene made no claim of sexual stereotyping and there was virtually no evidentiary basis upon which Rene could have supported such a claim had it been made. In fact, at one point in his deposition in referring to another worker who had harassed him, he stated: "He's skinny. He is not masculine like I am." [4]

Rene himself repeatedly stated that his co-workers harassed him because of his sexual orientation. On no fewer than nine occasions during his deposition, Rene affirmed that his co-workers harassed him *only* because he was gay. At least some of these statements bear mentioning:

> A.  Correct.
> . . . .
> Q.  Was he whistling at you you think to make fun of you because you were gay?
> A.  Yes. Of course. The way he looked at me, you know, and winked his eye. Come on.

First of all, Rene's response, "Right. Like a man does to a woman," is obviously a response confirming the whistling, not the way he walks. Furthermore, later questions and answers confirm that the whistling was because he was gay, not because of the way he walked. It is significant that Rene never contended to the district court that the basis for the discrimination was sexual stereotyping because of the way Rene walked or any other characteristic he exhibited at the workplace.

---

4.  Judge Pregerson's opinion contends that the discrimination against Rene was a form of sexual stereotyping. The only evidence that was discovered to support this contention in the entire record is one line in Rene's deposition of over 100 pages. The question refers to a note that Rene made concerning harassment he had experienced from Elisio, one of the butlers, toward the end of Rene's employment. The relevant questions and answers in the deposition are:

> Q.  And in this note he's teasing you about the way you walk and he whistles at you like a woman; is that right?
> A.  Right. Like a man does to a woman.
> Q.  And that's what you report on the third page of Exhibit 39 as well, that Elisio is whistling at you as a man does to a woman?

Q. Do you think he did it to you and Carlos because you were gay?

A. Yes.

. . . .

Q. It was just because you were gay?

A. Right.

. . . .

Q. And that again was directed at you and Carlos—

A. Right.

Q. —because you were gay?

A. Right.

. . . .

Q. They were teasing you because you and Carlos are gay?

A. Correct.

Q. Did any of the other guys ever get teased about the relationships they were in that you recall?

A. No.

. . . .

Q. And they did this specifically because you were gay?

A. Yes. To them it was a joke.

Moreover, as I explained earlier, Rene did nothing to show the district court that the harassment was because of his gender. Instead, he stated quite plainly in his written presentation to the court that the question presented was whether the conduct he alleged "is prohibited by Title VII *even though it was directed at [him] because of his sexual orientation.*" (Emphasis added.)

### V.

The degrading and humiliating treatment Rene describes is appalling and deeply disturbing. I agree with the eloquent words of the First Circuit:

We hold no brief for harassment because of sexual orientation; it is a noxious practice, deserving of censure and opprobrium. But we are called upon here to construe a statute as glossed by the Supreme Court, not to make a moral judgment—and we regard it as settled law that, as drafted and authoritatively construed, Title VII does not proscribe harassment simply because of sexual orientation.

*Higgins,* 194 F.3d at 259.

Rene's lawsuit was brought solely on the basis that he was harassed in the workplace because of his sexual orientation, which is not actionable under Title VII of the Civil Rights Act; therefore the summary judgment was properly entered. I would affirm the district court.