*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0160P (6th Cir.)
File Name: 04a0160p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JIMMIE L. SMITH,
　　　*Plaintiff-Appellant,*

　　　*v.*

No. 03-3399

CITY OF SALEM, OHIO,
THOMAS EASTEK, WALTER
GREENAMYER, BROOKE
ZELLERS, LARRY D. DEJANE,
JAMES A. ARMENI, JOSEPH
JULIAN, and HARRY DUGAN,
　　　*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 02-01405—Peter C. Economus, District Judge.

Argued: March 19, 2004

Decided and Filed: June 1, 2004

Before: COLE and GILMAN, Circuit Judges;
SCHWARZER, Senior District Judge.[*]

_____

[*] The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

## COUNSEL

**ARGUED:** Randi A. Barnabee, DEBORAH A. SMITH & COMPANY, Northfield, Ohio, for Appellant. Aretta K. Bernard, ROETZEL & ANDRESS, Akron, Ohio, for Appellees. **ON BRIEF:** Randi A. Barnabee, DEBORAH A. SMITH & COMPANY, Northfield, Ohio, for Appellant. Aretta K. Bernard, ROETZEL & ANDRESS, Akron, Ohio, for Appellees.

## OPINION

R. GUY COLE, JR., Circuit Judge. Plaintiff-Appellant Jimmie L. Smith appeals from a judgment of the United States District Court for the Northern District of Ohio dismissing his claims against his employer, Defendant-Appellant City of Salem, Ohio, and various City officials, and granting judgment on the pleadings to Defendants, pursuant to Federal Rule of Civil Procedure 12(c). Smith, who considers himself a transsexual and has been diagnosed with Gender Identity Disorder, alleged that Defendants discriminated against him in his employment on the basis of sex. He asserted claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1983. The district court dismissed those claims pursuant to Rule 12(c). Smith also asserted state law claims for invasion of privacy and civil conspiracy; the district court dismissed those claims as well, having declined to exercise supplemental jurisdiction over them.

For the following reasons, we reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion.

# I. BACKGROUND

In reviewing a motion for judgment on the pleadings pursuant to Rule 12(c), we construe the complaint in the light most favorable to the plaintiff and accept the complaint's factual inferences as true. *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001). The following facts are drawn from Smith's complaint.

Smith is – and has been, at all times relevant to this action – employed by the city of Salem, Ohio, as a lieutenant in the Salem Fire Department (the "Fire Department"). Prior to the events surrounding this action, Smith worked for the Fire Department for seven years without any negative incidents. Smith – biologically and by birth a male – is a transsexual and has been diagnosed with Gender Identity Disorder ("GID"), which the American Psychiatric Association characterizes as a disjunction between an individual's sexual organs and sexual identity. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 576-582 (4th ed. 2000). After being diagnosed with GID, Smith began "expressing a more feminine appearance on a full-time basis" – including at work – in accordance with international medical protocols for treating GID. Soon thereafter, Smith's co-workers began questioning him about his appearance and commenting that his appearance and mannerisms were not "masculine enough." As a result, Smith notified his immediate supervisor, Defendant Thomas Eastek, about his GID diagnosis and treatment. He also informed Eastek of the likelihood that his treatment would eventually include complete physical transformation from male to female. Smith had approached Eastek in order to answer any questions Eastek might have concerning his appearance and manner and so that Eastek could address Smith's co-workers' comments and inquiries. Smith specifically asked Eastek, and Eastek promised, not to divulge the substance of their conversation to any of his superiors, particularly to Defendant Walter Greenamyer, Chief of the Fire Department. In short order,

however, Eastek told Greenamyer about Smith's behavior and his GID.

Greenamyer then met with Defendant C. Brooke Zellers, the Law Director for the City of Salem, with the intention of using Smith's transsexualism and its manifestations as a basis for terminating his employment. On April 18, 2001, Greenamyer and Zellers arranged a meeting of the City's executive body to discuss Smith and devise a plan for terminating his employment. The executive body included Defendants Larry D. DeJane, Salem's mayor; James A. Armeni, Salem's auditor; and Joseph S. Julian, Salem's service director. Also present was Salem Safety Director Henry L. Willard, now deceased, who was never a named defendant in this action.

Although Ohio Revised Code § 121.22(G) – which sets forth the state procedures pursuant to which Ohio municipal officials may meet to take employment action against a municipal employee – provides that officials "may hold an executive session to consider the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee only after a majority of a quorum of the public body determines, by a roll call vote, to hold an executive session and only at a regular or special meeting for the sole purpose of [considering such matters]," the City did not abide by these procedures at the April 18, 2001 meeting.

During the meeting, Greenamyer, DeJane, and Zellers agreed to arrange for the Salem Civil Service Commission to require Smith to undergo three separate psychological evaluations with physicians of the City's choosing. They hoped that Smith would either resign or refuse to comply. If he refused to comply, Defendants reasoned, they could terminate Smith's employment on the ground of insubordination. Willard, who remained silent during the meeting, telephoned Smith afterwards to inform him of the plan, calling Defendants' scheme a "witch hunt."

Two days after the meeting, on April 20, 2001, Smith's counsel telephoned DeJane to advise him of Smith's legal representation and the potential legal ramifications for the City if it followed through on the plan devised by Defendants during the April 18 meeting. On April 22, 2001, Smith received his "right to sue" letter from the U.S. Equal Employment Opportunity Commission ("EEOC"). Four days after that, on April 26, 2001, Greenamyer suspended Smith for one twenty-four hour shift, based on his alleged infraction of a City and/or Fire Department policy.

At a subsequent hearing before the Salem Civil Service Commission (the "Commission") regarding his suspension, Smith contended that the suspension was a result of selective enforcement in retaliation for his having obtained legal representation in response to Defendants' plan to terminate his employment because of his transsexualism and its manifestations. At the hearing, Smith sought to elicit testimony from witnesses regarding the meeting of April 18, 2001, but the City objected and the Commission's chairman, Defendant Harry Dugan, refused to allow any testimony regarding the meeting, despite the fact that Ohio Administrative Code § 124-9-11 permitted Smith to introduce evidence of disparate treatment and selective enforcement in his hearing before the Commission.

The Commission ultimately upheld Smith's suspension. Smith appealed to the Columbiana County Court of Common Pleas, which reversed the suspension, finding that "[b]ecause the regulation [that Smith was alleged to have violated] was not effective[,] [Smith] could not be charged with violation of it."

Smith then filed suit in the federal district court. In his complaint, he asserted Title VII claims of sex discrimination and retaliation, along with claims pursuant to 42 U.S.C. § 1983 and state law claims of invasion of privacy and civil conspiracy. In a Memorandum Opinion and Order dated February 26, 2003, the district court dismissed the federal

claims and granted judgment on the pleadings to Defendants pursuant to Federal Rule of Civil Procedure 12(c). The district judge also dismissed the state law claims without prejudice, having declined to exercise supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367(c)(3).

## II. ANALYSIS

On appeal, Smith contends that the district court erred in holding that: (1) he failed to state a claim of sex stereotyping; (2) Title VII protection is unavailable to transsexuals; (3) even if he had stated a claim of sex stereotyping, he failed to demonstrate that he suffered an adverse employment action; and (4) he failed to state a claim based on the deprivation of a constitutional or federal statutory right, pursuant to 42 U.S.C. § 1983.

We review *de novo* the dismissal of a complaint pursuant to Rule 12(c). *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). A motion for judgment on the pleadings shall be granted only where, construing the complaint in the light most favorable to the plaintiff, and accepting all of its factual allegations as true, the plaintiff can prove no set of facts in support of the claims that would entitle him to relief. *Id.* (citation omitted).

### A. *Title VII*

The parties disagree over two issues pertaining to Smith's Title VII claims: (1) whether Smith properly alleged a claim of sex stereotyping, in violation of the Supreme Court's pronouncements in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989); and (2) whether Smith alleged that he suffered an adverse employment action.

Defendants do not challenge Smith's complaint with respect to any of the other elements necessary to establish discrimination and retaliation claims pursuant to Title VII. In any event, we affirmatively find that Smith has made out a

*prima facie* case for both claims. To establish a *prima facie* case of employment discrimination pursuant to Title VII, a plaintiff must show that: (1) he is a member of a protected group; (2) he suffered an adverse employment action; (3) he was qualified for the position in question; and (4) he was treated differently from similarly situated members of the protected class. *Gettings v. Bldg. Laborers Local 310 Fringe Benefits Fund,* 349 F.3d 300, 305 (6th Cir. 2003). Smith is a member of a protected class. His complaint asserts that he is a male with Gender Identity Disorder, and Title VII's prohibition of discrimination "because of . . . sex" protects men as well as women. *Newport News Shipbuilding and Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669, 682 (1983). The complaint also alleges both that Smith was qualified for the position in question – he had been a lieutenant in the Fire Department for seven years without any negative incidents – and that he was treated differently from other males in the department because of his non-masculine behavior and GID.

To establish a *prima facie* case of retaliation pursuant to Title VII, a plaintiff must show that: (1) he engaged in an activity protected by Title VII; (2) the defendant knew he engaged in this protected activity; (3) thereafter, the defendant took an employment action adverse to him; and (4) there was a causal connection between the protected activity and the adverse employment action. *DiCarlo v. Potter*, 358 F.3d 408, 420 (6th Cir. 2004) (citation omitted). Smith's complaint satisfies the first two requirements by explaining how he sought legal counsel after learning of the Salem executive body's April 18, 2001 meeting concerning his employment; how his attorney contacted Defendant DeJane to advise Defendants of Smith's representation; and how Smith filed a complaint with the EEOC concerning Defendants' meeting and intended actions. With respect to the fourth requirement, a causal connection between the protected activity and the adverse employment action, "[a]lthough no one factor is dispositive in establishing a causal connection, evidence . . . that the adverse action was taken shortly after the plaintiff's exercise of protected rights

is relevant to causation." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000); *see also Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 110 (1st Cir. 1988) (employee's discharge "soon after" engaging in protected activity "is indirect proof of a causal connection between the firing and the activity because it is strongly suggestive of retaliation."); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731 (9th Cir. 1986) ("Causation sufficient to establish a prima facie case of unlawful retaliation may be inferred from the proximity in time between the protected action and the allegedly retaliatory discharge."). Here, Smith was suspended on April 26, 2001, just days after he engaged in protected activity by receiving his "right to sue" letter from the EEOC, which occurred four days before the suspension, and by his attorney's contacting Mayor DeJane, which occurred six days before the suspension. The temporal proximity between the events is significant enough to constitute direct evidence of a causal connection for the purpose of satisfying Smith's burden of demonstrating a *prima facie* case.

We turn now to examining whether Smith properly alleged a claim of sex stereotyping, in violation of the Supreme Court's pronouncements in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), and whether Smith alleged that he suffered an adverse employment action.

### 1. *Sex Stereotyping*

Title VII of the Civil Rights Act of 1964 provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

In his complaint, Smith asserts Title VII claims of retaliation and employment discrimination "because of . . . sex." The district court dismissed Smith's Title VII claims on

the ground that he failed to state a claim for sex stereotyping pursuant to *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). The district court implied that Smith's claim was disingenuous, stating that he merely "invokes the term-of-art created by *Price Waterhouse*, that is, 'sex-stereotyping,'" as an end run around his "real" claim, which, the district court stated, was "based upon his transsexuality." The district court then held that "Title VII does not prohibit discrimination based on an individual's transsexualism."

Relying on *Price Waterhouse* – which held that Title VII's prohibition of discrimination "because of . . . sex" bars gender discrimination, including discrimination based on sex stereotypes – Smith contends on appeal that he was a victim of discrimination "because of . . . sex" both because of his gender non-conforming conduct and, more generally, because of his identification as a transsexual. We find both bases of discrimination actionable pursuant to Title VII.

We first address whether Smith has stated a claim for relief, pursuant to *Price Waterhouse*'s prohibition of sex stereotyping, based on his gender non-conforming behavior and appearance. In *Price Waterhouse*, the plaintiff, a female senior manager in an accounting firm, was denied partnership in the firm, in part, because she was considered "macho." 490 U.S. at 235. She was advised that she could improve her chances for partnership if she were to take "a course at charm school," "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." *Id.* (internal quotation marks omitted). Six members of the Court agreed that such comments bespoke gender discrimination, holding that Title VII barred not just discrimination because Hopkins was a woman, but also sex stereotyping – that is, discrimination because she failed to *act* like a woman. *Id.* at 250-51 (plurality opinion of four Justices); *id.* at 258-61 (White, J., concurring); *id.* at 272-73 (O'Connor, J., concurring) (accepting plurality's sex stereotyping analysis and characterizing the "failure to conform to [gender] stereotypes" as a discriminatory

criterion; concurring separately to clarify the separate issues of causation and allocation of the burden of proof). As Judge Posner has pointed out, the term "gender" is one "borrowed from grammar to designate the sexes as viewed as social rather than biological classes." RICHARD A. POSNER, SEX AND REASON, 24-25 (1992). The Supreme Court made clear that in the context of Title VII, discrimination because of "sex" includes gender discrimination: "In the context of sex stereotyping, an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender." *Price Waterhouse*, 490 U.S. at 250. The Court emphasized that "we are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group." *Id.* at 251.

Smith contends that the same theory of sex stereotyping applies here. His complaint sets forth the conduct and mannerisms which, he alleges, did not conform with his employers' and co-workers' sex stereotypes of how a man should look and behave. Smith's complaint states that, after being diagnosed with GID, he began to express a more feminine appearance and manner on a regular basis, including at work. The complaint states that his co-workers began commenting on his appearance and mannerisms as not being masculine enough; and that his supervisors at the Fire Department and other municipal agents knew about this allegedly unmasculine conduct and appearance. The complaint then describes a high-level meeting among Smith's supervisors and other municipal officials regarding his employment. Defendants allegedly schemed to compel Smith's resignation by forcing him to undergo multiple psychological evaluations of his gender non-conforming behavior. The complaint makes clear that these meetings took place soon after Smith assumed a more feminine appearance and manner and after his conversation about this with Eastek. In addition, the complaint alleges that Smith was suspended for twenty-four hours for allegedly violating an unenacted municipal policy, and that the suspension was

ordered in retaliation for his pursuing legal remedies after he had been informed about Defendants' plan to intimidate him into resigning. In short, Smith claims that the discrimination he experienced was based on his failure to conform to sex stereotypes by expressing less masculine, and more feminine mannerisms and appearance.

Having alleged that his failure to conform to sex stereotypes concerning how a man should look and behave was the driving force behind Defendants' actions, Smith has sufficiently pleaded claims of sex stereotyping and gender discrimination.

In so holding, we find that the district court erred in relying on a series of pre-*Price Waterhouse* cases from other federal appellate courts holding that transsexuals, as a class, are not entitled to Title VII protection because "Congress had a narrow view of sex in mind" and "never considered nor intended that [Title VII] apply to anything other than the traditional concept of sex." *Ulane v. Eastern Airlines, Inc.*, 742 F.2d 1081, 1085, 1086 (7th Cir. 1984); *see also Holloway v. Arthur Andersen & Co.*, 566 F.2d 659, 661-63 (9th Cir. 1977) (refusing to extend protection of Title VII to transsexuals because discrimination against transsexuals is based on "gender" rather than "sex"). It is true that, in the past, federal appellate courts regarded Title VII as barring discrimination based only on "sex" (referring to an individual's anatomical and biological characteristics), but not on "gender" (referring to socially-constructed norms associated with a person's sex). *See, e.g., Ulane*, 742 F.2d at 1084 (construing "sex" in Title VII narrowly to mean only anatomical sex rather than gender); *Sommers v. Budget Mktg., Inc.*, 667 F.2d 748, 750 (8th Cir. 1982) (holding that transsexuals are not protected by Title VII because the "plain meaning" must be ascribed to the term "sex" in the absence of clear congressional intent to do otherwise); *Holloway*, 566 F.2d at 661-63 (refusing to extend protection of Title VII to transsexuals because discrimination against transsexualism is based on "gender" rather than "sex;" and "sex" should be

given its traditional definition based on the anatomical characteristics dividing "organisms" and "living beings" into male and female). In this earlier jurisprudence, male-to-female transsexuals (who were the plaintiffs in *Ulane, Sommers,* and *Holloway*) – as biological males whose outward behavior and emotional identity did not conform to socially-prescribed expectations of masculinity – were denied Title VII protection by courts because they were considered victims of "gender" rather than "sex" discrimination.

However, the approach in *Holloway, Sommers,* and *Ulane* – and by the district court in this case – has been eviscerated by *Price Waterhouse*. *See Schwenk v. Hartford*, 204 F.3d 1187, 1201 (9th Cir. 2000) ("The initial judicial approach taken in cases such as *Holloway* [and *Ulane*] has been overruled by the logic and language of *Price Waterhouse*."). By holding that Title VII protected a woman who failed to conform to social expectations concerning how a woman should look and behave, the Supreme Court established that Title VII's reference to "sex" encompasses both the biological differences between men and women, and gender discrimination, that is, discrimination based on a failure to conform to stereotypical gender norms. *See Price Waterhouse*, 490 U.S. at 251; *see also Schwenk*, 204 F.3d at 1202 (stating that Title VII encompasses instances in which "the perpetrator's actions stem from the fact that he believed that the victim was a man who 'failed to act like' one" and that "sex" under Title VII encompasses both the anatomical differences between men and women, and gender); *Rene v. MGM Grand Hotel, Inc.*, 305 F.3d 1061, 1068 (9th Cir. 2002) (en banc) (Pregerson, J., concurring) (noting that the Ninth Circuit had previously found that "same-sex gender stereotyping of the sort suffered by Rene – i.e. gender stereotyping of a male gay employee by his male co-workers" constituted actionable harassment under Title VII and concluding that "[t]he repeated testimony that his co-workers treated Rene, in a variety of ways, 'like a woman' constitutes ample evidence of gender stereotyping"); *Bibby v. Philadelphia Coca Cola Bottling Co.*, 260 F.3d 257, 262-63

(3d Cir. 2001) (stating that a plaintiff may be able to prove a claim of sex discrimination by showing that the "harasser's conduct was motivated by a belief that the victim did not conform to the stereotypes of his or her gender"); *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 874-75 (9th Cir. 2001) (holding that harassment "based upon the perception that [the plaintiff] is effeminate" is discrimination because of sex, in violation of Title VII), *overruling DeSantis v. Pac. Tel. & Tel. Co., Inc.*, 608 F.2d 327 (9th Cir. 1979); *Doe v. Belleville*, 119 F.3d 563, 580-81 (7th Cir. 1997) (holding that "Title VII does not permit an employee to be treated adversely because his or her appearance or conduct does not conform to stereotypical gender roles" and explaining that "a man who is harassed because his voice is soft, his physique is slight, his hair long, or because in some other respect he exhibits his masculinity in a way that does not meet his coworkers' idea of how men are to appear and behave, is harassed 'because of his sex'"), *vacated and remanded on other grounds*, 523 U.S. 1001 (1998).

After *Price Waterhouse*, an employer who discriminates against women because, for instance, they do not wear dresses or makeup, is engaging in sex discrimination because the discrimination would not occur but for the victim's sex. It follows that employers who discriminate against men because they *do* wear dresses and makeup, or otherwise act femininely, are also engaging in sex discrimination, because the discrimination would not occur but for the victim's sex. *See, e.g., Nichols,* 256 F.3d 864 (Title VII sex discrimination and hostile work environment claim upheld where plaintiff's male co-workers and supervisors repeatedly referred to him as "she" and "her" and where co-workers mocked him for walking and carrying his serving tray "like a woman"); *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 261 n.4 (1st Cir. 1999) ("[J]ust as a woman can ground an action on a claim that men discriminated against her because she did not meet stereotyped expectations of femininity, a man can ground a claim on evidence that other men discriminated against him because he did not meet

stereotypical expectations of masculinity." (internal citation omitted)); *see also Rosa v. Park West Bank & Trust Co.*, 214 F.3d 213 (1st Cir. 2000) (applying *Price Waterhouse* and Title VII jurisprudence to an Equal Credit Opportunity Act claim and reinstating claim on behalf of biologically male plaintiff who alleged that he was denied an opportunity to apply for a loan because was dressed in "traditionally feminine attire").

Yet some courts have held that this latter form of discrimination is of a different and somehow more permissible kind. For instance, the man who acts in ways typically associated with women is not described as engaging in the same activity as a woman who acts in ways typically associated with women, but is instead described as engaging in the different activity of being a transsexual (or in some instances, a homosexual or transvestite). Discrimination against the transsexual is then found not to be discrimination "because of . . . sex," but rather, discrimination against the plaintiff's unprotected status or mode of self-identification. In other words, these courts superimpose classifications such as "transsexual" on a plaintiff, and then legitimize discrimination based on the plaintiff's gender non-conformity by formalizing the non-conformity into an ostensibly unprotected classification. *See, e.g., Dillon v. Frank*, No. 90-2290, 1992 WL 5436 (6th Cir. Jan. 15, 1992).

Such was the case here: despite the fact that Smith alleges that Defendants' discrimination was motivated by his appearance and mannerisms, which Defendants felt were inappropriate for a male, the district court expressly declined to discuss the applicability of *Price Waterhouse.* The district court therefore gave insufficient consideration to Smith's well-pleaded claims concerning his contra-gender behavior, but rather accounted for that behavior only insofar as it confirmed for the court Smith's status as a transsexual, which the district court held precluded Smith from Title VII protection.

Such analyses cannot be reconciled with *Price Waterhouse*, which does not make Title VII protection against sex stereotyping conditional or provide any reason to exclude Title VII coverage for non sex-stereotypical behavior simply because the person is a transsexual. As such, discrimination against a plaintiff who is a transsexual – and therefore fails to act like and/or identify with the gender norms associated with his or her sex – is no different from the discrimination directed against Ann Hopkins in *Price Waterhouse*, who, in sex-stereotypical terms, did not act like a woman. Sex stereotyping based on a person's gender non-conforming behavior is impermissible discrimination, irrespective of the cause of that behavior; a label, such as "transsexual," is not fatal to a sex discrimination claim where the victim has suffered discrimination because of his or her gender non-conformity. Accordingly, we hold that Smith has stated a claim for relief pursuant to Title VII's prohibition of sex discrimination.

Even if Smith had alleged discrimination based only on his self-identification as a transsexual – as opposed to his specific appearance and behavior –  this claim too is actionable pursuant to Title VII. By definition, transsexuals are individuals who fail to conform to stereotypes about how those assigned a particular sex at birth should act, dress, and self-identify. *Ergo*, identification as a transsexual is the statement or admission that one wishes to be the opposite sex or does not relate to one's birth sex. Such an admission – for instance the admission by a man that he self-identifies as a woman and/or that he wishes to be a woman – itself violates the prevalent sex stereotype that a man should perceive himself as a man. Discrimination based on transsexualism is rooted in the insistence that sex (organs) and gender (social classification of a person as belonging to one sex or the other) coincide. This is the very essence of sex stereotyping. Accordingly, to the extent that Smith also alleges discrimination based solely on his identification as a transsexual, he has alleged a claim of sex stereotyping pursuant to Title VII. As noted above, Smith's birth sex is

male and this is the basis for his protected class status under Title VII even under this formulation of his claim.

Finally, we note that, in its opinion, the district court repeatedly places the term "sex stereotyping" in quotation marks and refers to it as a "term of art" used by Smith to disingenuously plead discrimination because of transsexualism. Similarly, Defendants refer to sex stereotyping as "the *Price Waterhouse* loophole." (Appellees' Brief at 6.) These characterizations are almost identical to the treatment that Price Waterhouse itself gave sex stereotyping in its briefs to the U.S. Supreme Court. As we do now, the Supreme Court noted the practice with disfavor, stating:

> In the specific context of sex stereotyping, an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender. Although the parties do not overtly dispute this last proposition, the placement by Price Waterhouse of "sex stereotyping" in quotation marks throughout its brief seems to us an insinuation either that such stereotyping was not present in this case or that it lacks legal relevance. We reject both possibilities.

*Price Waterhouse*, 490 U.S. at 250.

### 2. *Adverse Employment Action*

Despite having dismissed Smith's Title VII claim for failure to state a claim of sex stereotyping – a finding we have just rejected – the district court nevertheless addressed the merits of Smith's Title VII claims *arguendo*. Relying on *White v. Burlington Northern & Sante Fe Ry. Co.*, 310 F.3d 443 (6th Cir. 2002), the district court held that Smith's suspension was not an adverse employment action because the Court of Common Pleas, rendering the "ultimate employment decision," reversed the suspension, and that accordingly, Smith's Title VII claim could not lie. Because

this Circuit has since vacated and overruled *White*, 364 F.3d 789 (6th Cir. 2004) (en banc), and joined the majority of other circuits in rejecting the "ultimate employment decision" standard, we hold that the district court erred in its analysis and that Smith has successfully pleaded an adverse employment action in support of his employment discrimination and retaliation claims pursuant to Title VII.

Common to both the employment discrimination and retaliation claims is a showing of an adverse employment action, which is defined as a "materially adverse change in the terms and conditions of [plaintiff's] employment." *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999). A "bruised ego," a "mere inconvenience or an alteration of job responsibilities" is not enough to constitute an adverse employment action. *White,* 364 F.3d at 797 (quoting *Kocsis v. Multi-Care Mgmt. Inc.,* 97 F.3d 876, 886 (6th Cir. 1996)). Examples of adverse employment actions include firing, failing to promote, reassignment with significantly different responsibilities, a material loss of benefits, suspensions, and other indices unique to a particular situation. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *White*, 364 F.3d at 798. Here, the Fire Department suspended Smith for twenty-four hours. Because Smith works in twenty-four hour shifts, that twenty-four hour suspension was the equivalent of three eight-hour days for the average worker, or, approximately 60% of a forty-hour work week. Pursuant to the liberal notice pleading requirements set forth in Fed. R. Civ. P. 8, this allegation, at this phase of the litigatoin, is sufficient to satisfy the adverse employment requirement of both an employment discrimination and retaliation claim pursuant to Title VII.[1]

---

[1] Smith's complaint does not state whether he was suspended with or without pay. Because we must construe the complaint in the light most favorable to the plaintiff, *Ziegler*, 249 F.3d at 512, and given the liberal pleading standards of Federal Rule of Civil Procedure 8, we do not find this failure dispositive. A "materially adverse change" in employment conditions often involves a material loss of pay or benefits, but that is not

It is irrelevant that Smith's suspension was ultimately reversed by the Court of Common Pleas after he challenged the suspension's legality. In *White*, this Court recently joined the majority of other circuits in rejecting the "ultimate employment decision" standard whereby a negative employment action is not considered an "adverse employment action" for Title VII purposes when the decision is subsequently reversed by the employer, putting the plaintiff in the position he would have been in absent the negative action. *White*, 364 F.3d 789 (holding that the suspension of a railroad employee without pay, followed thirty-seven days later by reinstatement with back pay, was an "adverse employment action" for Title VII purposes). Even if the "ultimate employment decision" standard were still viable, the district court erred in concluding that, because the Court of Common Pleas overturned the suspension, it was not an adverse employment action. There is no legal authority for the proposition that reversal by a *judicial* body – as opposed to the employer – declassifies a suspension as an adverse employment action.

Accordingly, Smith has stated an adverse employment action and, therefore, satisfied all of the elements necessary to allege a *prima facie* case of employment discrimination and retaliation pursuant to Title VII. We therefore reverse the district court's grant of judgment on the pleadings to Defendants with respect to those claims.

### B. *42 U.S.C. § 1983 Claims*

The district court also dismissed Smith's claims pursuant to 42 U.S.C. § 1983 on the ground that he failed to state a

---

always the case, and "other indices that might be unique to a particular situation" can constitute a "materially adverse change" as well. *Hollins,* 188 F.3d at 662. Because no discovery has been conducted yet, we do not know the full contours of the suspension. For now, however, for the reasons just stated, we find that Smith has sufficiently alleged an adverse employment action.

claim based on the deprivation of a constitutional or federal statutory right.

42 U.S.C. § 1983 provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law. Smith has stated a claim for relief pursuant to § 1983 in connection with his sex-based claim of employment discrimination. Individuals have a right, protected by the Equal Protection clause of the Fourteenth Amendment, to be free from discrimination on the basis of sex in public employment. *Davis v. Passman*, 442 U.S. 228, 234-35 (1979). To make out such a claim, a plaintiff must prove that he suffered purposeful or intentional discrimination on the basis of gender. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977). As this Court has noted several times, "the showing a plaintiff must make to recover on a disparate treatment claim under Title VII mirrors that which must be made to recover on an equal protection claim under section § 1983." *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988) (citing *Kitchen v. Chippewa Valley Schs.*, 825 F.2d 1004, 1011 (6th Cir. 1987); *Daniels v. Bd. of Educ.*, 805 F.2d 203, 207 (6th Cir. 1986); *Grano v. Dep't of Dev.*, 637 F.2d 1073, 1081-82 (6th Cir. 1980); *Lautermilch v. Findlay City Schs.*, 314 F.3d 271, 275 (6th Cir. 2003) ("To prove a violation of the equal protection clause under § 1983, [a plaintiff] must prove the same elements as are required to establish a disparate treatment claim under Title VII.") (quotation and citation omitted). The facts Smith has alleged to support his claims of gender discrimination pursuant to Title VII easily constitute a claim of sex discrimination grounded in the Equal Protection Clause of the Constitution, pursuant to § 1983. *See Back v. Hastings on Hudson Union Free Sch. Dist.*, — F.3d —, No. 03-7058, 2004 WL 739846, at * 5-7 (2d Cir. Apr. 7, 2004) (holding that claims premised on *Price Waterhouse* sex stereotyping theory sufficiently constitute claim of sex discrimination pursuant to § 1983).

Defendants urge us to hold otherwise, on the ground that Smith's complaint fails to refer specifically to the Equal Protection Clause of the U.S. Constitution. But the Federal Rules of Civil Procedure provide for a liberal system of notice pleading. Fed. R. Civ. P. 8(a). A plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Soremna N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Claims made pursuant to 42 U.S.C. § 1983 are not subject to heightened pleading standards. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 165-66 (1993) (rejecting heightened pleading standard for § 1983 claims); *Jones v. Duncan*, 840 F.2d 359 (6th Cir. 1988) (holding that § 1983 claims need not set forth in detail all the particularities of a plaintiff's claim against a defendant). Moreover, legal theories of recovery need not be spelled out as long as the relevant issues are sufficiently implicated in the pleadings; in considering motions pursuant to Fed. R. Civ. P. 12(c), we ask not whether a complaint points to a specific statute, but whether relief is possible under any set of facts that could be established consistent with the allegation. Because Smith's sex discrimination claim so thoroughly and obviously sounds in a constitutional claim of equal protection, Defendants had fair notice of his claim and the ground upon which it rests. As such, we hold that Smith has satisfied the liberal notice pleading requirements set forth in Fed. R. Civ. P. 8 with respect to his claim of sex discrimination, grounded in an alleged equal protection violation, and we therefore reverse the district court's grant of judgment on the pleadings dismissing Smith's § 1983 claim.

In his appellate brief, Smith also contends that his complaint alleges a violation of his constitutional right to due process, based on the City's failure to comply with the state statutory and administrative procedures that an Ohio municipality must follow when taking official employment

action against a public employee. His complaint outlines the statutory procedures, governed by O.R.C. § 121.22(G), pursuant to which members of an Ohio municipality may meet for purposes of taking official employment action against a public employee, and it alleges that those procedures were not followed. The complaint also discusses O.A.C. § 124-9-11, which would have permitted Smith to call witnesses at his post-suspension hearing in front of the Salem Civil Service Commission; and the complaint alleges that he was barred from calling witnesses. Smith contends that these allegations implicate his right to due process pursuant to the Fourteenth Amendment of the U.S. Constitution.

However, it is well-settled that state law does not ordinarily define the parameters of due process for Fourteenth Amendment purposes, and that state law, by itself, cannot be the basis for a federal constitutional violation. *See Purisch v. Tennessee Technological Univ.*, 76 F.3d 1414, 1423 (6th Cir. 1996) ("Violation of a state's formal [employment grievance] procedure . . . does not in itself implicate constitutional due process concerns."). Neither Smith's complaint nor his brief specifies what deprivation of property or liberty allegedly stemmed from the City's failure to comply with state procedural and administrative rules concerning his employment. Accordingly, he has failed to state a federal due process violation pursuant to § 1983.

In sum, we hold that Smith has failed to state a § 1983 claim based on violations of his right to due process. However, he has stated a § 1983 claim of sex discrimination, grounded in an alleged equal protection violation, and, for that reason, we reverse the district court's grant of judgment on the pleadings dismissing Smith's § 1983 claim.

### III.  CONCLUSION

Because Smith has successfully stated claims for relief pursuant to both Title VII and 42 U.S.C. § 1983, the judgment of the district court is REVERSED and this case is

REMANDED to the district court for further proceedings consistent with this opinion.